In re VESTA INSURANCE
GROUP, INC., et al.

In re James E. Tait

In re Jimmy K. Walker

In re William Perry Cronin

In re National Benefit Advisory
Association, et al.

Nos. 04–0141, 04–0156, 04–0157,
04–0165, 04–0179.

Supreme Court of Texas.

March 17, 2006.

Rehearing Denied June 30, 2006.

Wade Caven Crosnoe, Thompson Coe Cousins & Irons, L.L.P., Austin, J. Richard Harmon, Shawn W. Phelan, Thompson Coe Cousins & Irons, LLP, Dallas, Ralph H. Duggins, Cantey & Hanger, L.L.P., David F. Farris, Lively, Padfield & Stout, Fort Worth, for Vesta Insurance Group Inc.

Wade Caven Crosnoe, Thompson Coe Cousins & Irons, L.L.P., Austin, for Vesta Fire Insurance Corporation.

Marshall M. Searcy Jr., Brandon T. Hurley, Kelly Hart & Hallman, P.C., Fort Worth, for William Perry Cronin.

R.H. Wallace Jr., Monika G. Cooper, John Christopher Nickelson, Joseph W. Spence, Shannon Gracey Ratliff & Miller, L.L.P., Fort Worth, for James E. Tait.

William L. Kirkman, Bourland & Kirkman, Fort Worth, for Robert H. Merrill, National Benefit Advisory Association, American Administrative Services Inc., Insurance Consultants of America Inc., American Business Management Inc.

Walker C. Friedman, Christian Douglas Tucker, Friedman Suder & Cooke, P.C., Fort Worth, for Jimmy K. Walker.

John L. Malesovas, Malesovas & Martin, L.L.P., Waco, Donald H. Ray, Ray & Wilson, Fort Worth, James A. Baker, Hughes & Luce, LLP, Dallas, for James H. Cashion, Jr.

PER CURIAM.

An insurance company and an independent agent agreed to arbitrate rather than litigate any dispute "under or with respect to" their contract. But when the contract was terminated, the agent neither litigated nor arbitrated his dispute with the company; instead, he filed a tortious interference with contract suit against the insurer's parent company, the agent who took his place, and two officers or affiliates of each. The trial court refused to compel arbitration under the Federal Arbitration Act,[1] and the Second Court of Appeals denied mandamus relief. We conditionally grant it. *See In re Weekley,* 180 S.W.3d 127, 130 (Tex.2005) ("Mandamus relief is proper to

---

1. 9 U.S.C. § 1 *et. seq.* The parties stipulated that the arbitration clause here is governed by the FAA.

enforce arbitration agreements governed by the FAA.").

James Cashion and States General Insurance Company signed a contract on September 28, 1999, in which Cashion agreed to sell health insurance policies as a general agent for States General. The contract provided that States General could modify or cancel Cashion's commissions on 60 days' notice, and either party could terminate the relationship on 180 days' written notice. The contract also required arbitration of "any dispute between them under or with respect to this contract." [2] States General and Cashion were the only parties to the contract.

In November 2000, States General gave notice of its intent to reduce Cashion's commissions. In December 2000, Vesta Insurance Group and Vesta Fire Insurance Corporation (collectively "Vesta") purchased 100 percent of the stock of States General. A month later, States General terminated Cashion and replaced him with Jimmy Walker.

■ On March 1, 2001, Cashion filed suit against Vesta and two of its corporate officers, James Tait and William Perry Cronin,[3] and against Walker and two of his affiliates.[4] Generally, the suit alleged tortious interference with Cashion's contracts with States General and with his own subagents. States General (now a Vesta affiliate) intervened, but later settled with Cashion and is no longer a party. Accordingly, the only remaining party who was a signatory of the arbitration agreement is Cashion; the relators who seek to compel arbitration are all nonsignatories.

■ We recently held that Texas law, consistent with federal law of direct-benefits estoppel, requires a nonparty to arbitrate a claim "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 741 (Tex.2005); *see also Weekley,* 180 S.W.3d at 131. While the boundaries of direct-benefits estoppel are not always clear, nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law. *Weekley,* 180 S.W.3d at 132, 134.

■ Tortious interference claims do not fall comfortably in either category. The obligation not to interfere with existing contracts is a general obligation imposed by law. But it is *not* imposed on the parties to that contract, as "a party cannot tortiously interfere with its own contract." *Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex.1995). Nor is it imposed on corporate agents, except for actions completely contrary to corporate interests. *Id.* In other words, "a person must be a stranger to a contract to tortiously interfere with it." *Morgan Stanley & Co., Inc. v. Texas Oil Co.,* 958 S.W.2d 178, 179 (Tex.1997). Thus, while liability for tortious interference arises from the general law, *nonlia-*

---

2. The provision stated:
 ARBITRATION. The parties intend that any dispute between them under or with respect to this contract shall be resolved without resort to any litigation.... States and Cashion agree that they will submit such dispute to arbitration in the manner specified in, and such arbitration proceeding will be conducted in accordance with the rules of the American Arbitration Association....

 This shall be the sole and exclusive method of resolving such disputes.

3. Tait was Vesta's former chief executive officer, and Cronin was Vesta's former chief financial officer.

4. National Benefit Advisory Association, a company Walker owned, and Robert Merill, his business partner.

*bility* arises from connections with the contract.

■ For several reasons, we hold that tortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise more from the contract than general law, and thus fall on the arbitration side of the scale.

■ First, corporations must act through human agents. *Holloway*, 898 S.W.2d at 795. As a result, every contract claim against a corporation could be recast as a tortious interference claim against its agents. *See id.* While legal rules might render such claims unprofitable in the long run, in the short run they could be used to forestall arbitration. "The FAA directs courts to place arbitration agreements on equal footing with other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Accordingly, we must avoid any rule that makes it easier to avoid arbitration clauses than other clauses of a contract. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 n. 2 (Tex.2003) (noting most courts have found illusory any con-

tract allowing one party to unilaterally avoid arbitration).

■ Second, requiring arbitration of such claims complies with the rule that "we look first to whether the parties agreed to arbitrate a dispute." *Waffle House*, 534 U.S. at 294, 122 S.Ct. 754. When contracting parties agree to arbitrate all disputes "under or with respect to" a contract (as they did here), they generally intend to include disputes about their agents' actions because "[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway*, 898 S.W.2d at 795. If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract.

Finally, many Texas courts of appeals have held that a tortious interference claim against a signatory's employees or affiliates must be arbitrated, even though the latter are nonsignatories.[5] Several federal

---

5. *See, e.g., In re Media Arts Group, Inc.*, 116 S.W.3d 900, 905 n. 4, 908 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied]) (compelling arbitration of suit alleging tortious interference and other claims brought by one signatory against employees and affiliates of the other); *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 137–38 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (same in suit by one signatory against employees and subcontractors of the other); *In re EGL Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 765–66 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding [mand. denied]) (same in suit by one signatory against subsequent employer of signatory employee, and its employees); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482–83 (Tex.App.—Dallas 2001, no pet.) (same in suit by one signatory against chairman and corporate counsel of the other); *In re Penn-*

*zoil Co.*, 30 S.W.3d 494, 499 (Tex.App.-San Antonio 2000, orig. proceeding) (same in suit by one signatory against corporation hired by other signatory as replacement); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 593 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (same in suit by one signatory against corporate affiliate of the other, as well as the affiliate's officers and directors); *Carlin v. 3V, Inc.*, 928 S.W.2d 291, 297 (Tex. App–Houston [14th Dist.] 1996, no writ) (same in suit by one signatory against sister corporation of the other); *Valero Energy Corp. v. Wagner & Brown, II*, 777 S.W.2d 564, 565 (Tex.App.-El Paso 1989, writ denied) (same in suit by one signatory against other signatory and affiliates); *Lette v. Brooke Corp.*, No. 13–02–00527–CV, 2004 WL 1797578, at *5–6 (Tex.App.—Corpus Christi, Aug. 12, 2004, pet. denied) (not designated for publication) (same in suit by one signatory against corporate affiliates of

courts have agreed.[6] We remain mindful of the importance of keeping federal and state law uniform so that arbitrability does not depend on where one seeks to compel it. *Kellogg,* 166 S.W.3d at 739.

We agree with Cashion that he would not be required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause. But he did not sue any strangers here; every defendant is a current or former owner, officer, agent, or affiliate of States General, with whom he agreed to arbitrate these disputes.

 Cashion also asserts that several of the relators waived any right to arbitration by litigating for two years in the trial court. There is a strong presumption against waiver under the FAA. *See In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex. 2002). Merely taking part in litigation is not enough unless a party "has substantially invoked the judicial process to its opponent's detriment." *Id.* (internal citations omitted). Delay alone generally does not establish waiver. *Id.*

According to the affidavit of one of his attorneys, Cashion incurred more than $200,000 in expenses and fees due to "prolonged and extensive discovery" that "would not have been allowed or occurred in an arbitration." The record shows that Cashion's pre-trial costs were largely self-inflicted—he sent far more discovery requests than he received, and amended his petition at least eleven times. The relators did not "shower" him with interrogatories and discovery requests, *see Keytrade USA, Inc. v. Ain Temouchent M/V,* 404 F.3d 891, 898 (5th Cir.2005); other than standard requests for disclosure (all requiring the same responsive information, *see* TEX. R. CIV. P. 194.2), they noticed a total of four depositions, and the Vesta defendants each sent a request for production. Because Cashion offered none of these documents in the trial court and presented no details about any of them, the record does not show whether these requests were limited or extensive, whether they sought information for affirmative claims or defensive ones, or even whether they addressed the merits or merely the arbitration issue. Further, Cashion does not allege that the discovery already conducted would not be useful in arbitration; to the contrary, he concedes it would be useful whether the case is arbitrated or tried. *See In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998) (noting that even substantial invocation of judicial process does not constitute waiver absent proof of prejudice). On this record, Cashion has not demonstrated sufficient prejudice to overcome the strong presumption against waiver.

---

signatory buyer). *But see Fridl v. Cook,* 908 S.W.2d 507, 513 (Tex.App.-El Paso 1995, writ dism'd w.o.j.) (refusing to compel arbitration of suit alleging tortious interference brought by one signatory against sole shareholder and alleged alter ego of the other because of independent fraud claim).

**6.** *See, e.g., Grigson v. Creative Artists Agency,* 210 F.3d 524, 527–28 (5th Cir.2000) (compelling arbitration of suit alleging tortious interference and other claims brought by one signatory against third parties); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Intern., Inc.,* 198 F.3d 88, 97–99 (2d Cir.1999) (same in suit by one signatory against corporate affiliates of the other); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757–758 (11th Cir.1993) (same in suit by one signatory against corporate affiliates of the other); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320–321 (4th Cir.1988)(same in suit by one signatory against corporate affiliates of the other); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.,* 659 F.2d 836, 839, 841, n. 9 (7th Cir.1981) (same in suit by one signatory against construction manager hired by the other).

Cashion's attorney also averred that Vesta and Cronin successfully moved to dismiss his commercial bribery claims against them, and that Walker unsuccessfully moved for summary judgment. But the former motions sought dismissal for lack of standing rather than on the merits, and the record reveals nothing about the latter as it was never tendered into the record or described in any particulars. Without more details than this, Cashion has not shown that the relators substantially invoked the judicial process enough to overcome the strong presumption against waiver.

We agree that allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation. *See Com–Tech Assoc. v. Computer Assoc. Int'l, Inc.,* 938 F.2d 1574, 1576–77 (2nd Cir.1991). We disagree that the record here shows that the relators did so, at least not to the degree necessary to overcome the presumption against waiver.

Accordingly, without hearing oral argument, *see* Tex. R. App. P. 52.8(c), we conditionally grant the writ of mandamus and direct the trial court to order that Cashion's claims proceed to arbitration. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.