IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0865
════════════
 
In re Merrill Lynch Trust 
Company FSB, Merrill Lynch Life Insurance Company, and Henry Medina, Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued March 23, 
2005
 
 
            
Justice 
Johnson, joined by Justice 
Wainwright, concurring in part and dissenting in part.
 
 
            
As the Court notes, arbitration is a matter of consent and the Federal 
Arbitration Act generally does not require parties to arbitrate when they have 
not agreed to do so. Volt Info. Scis., 
Inc. v. Bd. of Trs. of Leland Stanford Junior 
Univ., 489 U.S. 468, 478-79 (1989). But parties 
should be required to arbitrate disputes which, according to law, they have 
agreed to arbitrate. Our decisions relating to arbitration should facilitate 
prompt, final resolution of those disputes to the extent reasonably possible. To 
that end, I agree that the trial court abused its discretion in failing to 
require Juan and Norma Alaniz to arbitrate their 
claims against Henry Medina. While I agree that arbitration must be based on an 
agreement to arbitrate by the parties and no such agreement exists or can be 
relied on by ML Trust and ML Life, I do not consider that we write on a clean 
slate with these facts and this issue.
            
In this case to which the FAA applies, I would follow the stated position of the 
Federal Fifth Circuit Court of Appeals that equitable estoppel is applicable in cases where a signatory to a 
contract containing an arbitration clause alleges substantially interdependent 
and concerted misconduct by both a nonsignatory and 
one or more of the signatories to the contract. On that basis, I would hold that 
the trial court abused its discretion in failing to apply the second prong of 
Grigson v. Creative Artists Agency, 
L.L.C., 210 F.3d 524, 527 (5th Cir. 2000), to equitably estop the Alanizes from refusing 
to arbitrate claims against ML Trust and ML Life to the extent the claims are 
based on Medina’s alleged misconduct. I would grant relief accordingly.
            
The Alanizes’ petition alleges that, in early 1994, 
Medina, as agent 
for ML Life and ML Trust, approached them regarding the creation of an 
irrevocable trust. The petition then alleges that the wrongful actions of 
“Defendants” improperly induced the Alanizes to create 
an irrevocable trust and name ML Trust as trustee, which in turn allowed 
self-dealing among “Defendants” by ML Trust purchasing life insurance from ML 
Life with Medina 
acting as agent. The petition further alleges that “Defendants” violated various 
provisions of the Property Code, Insurance Code, and Business and Commerce Code; 
committed breaches of fiduciary duties, fraudulent conversion, theft, negligent 
misrepresentation, and negligence generally; and were unjustly enriched from the 
payments made by the Alanizes to ML Trust. 
Specifically, for example, the Alanizes allege:
 
12. . . . 
Defendants, including Mr. Medina in his capacity as an agent of Merrill Lynch 
Trust Company and Merrill Lynch Life Insurance Company, represented to 
Plaintiffs that Defendants were sophisticated, skilled and experienced in the 
areas of trusts and life insurance. Defendants also represented to Plaintiffs 
that they would act in a manner consistent with Plaintiffs [sic] best interests 
. . . .
 
13. In 
April, 1994 Defendants arranged for an attorney to draft the Alaniz Irrevocable Trust Agreement at Plaintiffs [sic] 
expense. Defendants exerted inappropriate and undue influence over the drafting 
. . . .
 
14. 
Defendants knowingly made false and misleading statements of material facts and 
law to Plaintiff . . .
 
15. 
Defendants’ actions were done with reckless and intentional disregard of the 
rights and well being of Plaintiffs . . . [and] to unjustly enrich Defendants . 
. . .
 
            
. . . .
 
20. 
Plaintiff [will show] that the acts, errors, and omissions of Defendants have 
amounted to the following . . .
 
21. . . . 
[T]he acts, errors, and omissions of Defendants have been a producing/proximate 
cause of Juan Alaniz’ and Norma Alaniz’ damages . . . .
 
 
The gravamen of the pleaded complaints against ML Trust and ML 
Life is that the companies acted both through Medina’s actions as the companies’ 
agent and in concert with Medina and each other to induce the Alanizes to transfer funds to ML Trust, and that ML Trust 
then paid life insurance premiums to its affiliate ML Life and paid fees to all 
defendants.
            
Several months before the Alanizes even considered 
purchasing life insurance and setting up an irrevocable life insurance trust 
they began dealing with Medina as a financial advisor who worked for 
Merrill Lynch. The scope of the arbitration provision the Alanizes signed when they first began dealing with Medina is broad. It 
encompasses “all controversies which may arise between us, including but not 
limited to those involving any transaction or the construction, performance, or 
breach of this or any other agreement between us, whether entered into prior, on 
or subsequent to the date hereof.” As the Court holds, the pleadings and 
evidence, together with the scope of the arbitration clause, compel the 
conclusion that, as to Medina, the Alanizes 
must arbitrate the claims on which they sued. ___ S.W.3d ___; see In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 762-63 
(Tex. 2006). 
As the Court also holds, ML Trust and ML Life are not entitled to enforce the 
arbitration agreement as “affiliates” of Merrill Lynch. But ML Trust and ML Life 
further urge that the Alanizes should be compelled to 
arbitrate on the basis of equitable estoppel. This is 
so, they claim, for two reasons. First, the Alanizes’ 
claims refer to or presume the existence of the Merrill Lynch CMA agreement 
containing the arbitration clause. Second, the Alanizes’ claims raise allegations of substantially 
interdependent and concerted misconduct by ML Trust, ML Life, and Medina. See Grigson, 210 F.3d at 527 (“First, equitable estoppel applies when the signatory to a written agreement 
containing an arbitration clause must rely on the terms of the written agreement 
in asserting its claims against the nonsignatory. . . 
. Second, application of equitable estoppel is 
warranted when the signatory to the contract containing an arbitration clause 
raises allegations of substantially interdependent and concerted misconduct by 
both the nonsignatory and one or more of the 
signatories to the contract. Otherwise the arbitration proceedings between the 
two signatories would be rendered meaningless and the federal policy in favor of 
arbitration effectively thwarted.” (emphasis 
omitted)).
            
We have previously noted that when the FAA applies there is some question as to 
whether federal law or state law applies to the issue of whether a party to a 
lawsuit may be compelled to arbitrate its claims. In re 
Kellogg Brown & Root, Inc., 166 S.W.3d 732, 738-39 (Tex. 2005). We 
cited Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 
267-68 (5th Cir. 2004), in acknowledging the Fifth Circuit’s position that 
federal law generally applies. In re Kellogg Brown & Root, 166 S.W.3d 
at 738-39. The Fifth Circuit explained that “because the determination of 
whether a non-signatory is bound by an arbitration provision ‘presents no state 
law question of contract formation or validity,’ a court should ‘look to the 
federal substantive law of arbitrability to resolve 
this question.’” Bailey, 364 F.3d at 268 n.6 (quoting Int’l Paper Co. 
v. Schwabedissen Maschinen 
& Anlagen GMBH, 206 F.3d 411, 417 n.4 (4th Cir. 2000)). Nevertheless, we 
concluded that state law may also play a role in the decision, and we applied 
“state law . . . informed by persuasive and well-reasoned federal precedent.” 
In re Kellogg Brown & Root, 166 S.W.3d at 739. Subsequently, we noted 
the importance of maintaining uniformity of state and federal law on this issue, 
stating that “[w]e remain mindful of the importance of keeping federal and state 
law uniform so that arbitrability does not depend on 
where one seeks to compel it.” In re Vesta, 192 S.W.3d at 763.
            
Equitable estoppel cannot force parties such as the 
Alanizes to arbitrate if they have not agreed to do so 
in the first instance. See Bridas S.A.P.I.C. v. 
Gov’t of Turkm., 345 
F.3d 347, 360-61 (5th Cir. 2003) (noting that equitable estoppel could not be used to compel a nonsignatory to arbitrate and distinguishing Grigson by noting that in Grigson the court “estopped 
a signatory plaintiff from relying upon the defendants’ status as 
a nonsignatory to prevent the defendants from 
compelling arbitration under the agreement. We justified applying equitable 
estoppel in Grigson 
in part because to do otherwise would permit the signatory plaintiff to ‘have it 
both ways.’”). Thus, equitable estoppel does not, by 
itself, create an agreement to arbitrate. But here, the Alanizes agreed to arbitrate—the question is with whom and 
what.
            
The Alanizes’ claims do not fall under the first Grigson equitable estoppel 
prong. The claims do not refer to or presume the existence of the CMA agreement 
containing the arbitration clause. But I would hold that because we are dealing 
with the FAA, under Grigson’s second prong the 
Alanizes are equitably estopped from asserting the lack of an agreement to 
arbitrate with ML Life and ML Trust as to those claims which depend on actions 
or omissions of Medina for which the Alanizes are also 
suing Medina. The Alanizes’ agreement to arbitrate 
encompasses those disputes.
            
In determining whether an outside party may assert equitable estoppel as a basis for joining arbitration proceedings, the 
Fifth Circuit has held that “‘[t]he lynchpin for equitable estoppel is equity’ and the point of applying it to compel 
arbitration is to prevent a situation that ‘would fly in the face of fairness.’” 
Hill v. G E Power Sys., Inc., 282 F.3d 343, 349 (5th Cir. 2002) (quoting 
Grigson, 210 F.3d at 527). Reviewing the 
various ways that proceedings could develop in this case, it seems that equity 
mandates allowing ML Trust and ML Life to participate in the arbitration. 
Speculating about future developments in lawsuits and legal theories parties 
might advance is generally not very productive. But at the risk of being 
nonproductive, one can envision how, if the claims against ML Trust and ML Life 
which are based on claims the Court holds the Alanizes 
must arbitrate with Medina are not referred to arbitration, then the 
possibility, if not probability, exists that Medina is going to be a significant 
part of the litigation whenever the Alanizes’ suit 
against ML Trust and ML Life is prosecuted. One reason for this comes to mind 
immediately. If Medina prevails in the arbitration, the Alanizes could press an argument in the lawsuit that even 
though the arbitration might preclude Medina’s personal liability to the Alanizes, his actions are imputable to ML Trust and ML Life 
because he acted as their agent and they should be held responsible for his 
actions. If that or some similar (or dissimilar) argument is entertained by the 
trial court, Medina is sure to be deposed, subpoenaed to 
testify at trial, etc.
            
On the other hand, and again without trying to speculate as to all the arguments 
counsel might develop, one can envision how, if the Alanizes prevail on their claims against Medina in 
arbitration, ML Trust and ML Life would argue that the arbitration proceedings 
do not bind them and that they remain entitled to fully litigate any issue 
involving Medina’s allegedly improper actions or omissions before the actions or 
omissions can be imputed to them. The net result is that Medina ends up deeply 
enmeshed in the litigation process no matter what happens in arbitration.
            
The above scenarios do not take into account various other problems presented by 
requiring the Alanizes to arbitrate only against 
Medina. For 
example, what happens if, after Medina and the Alanizes arbitrate, ML Trust and ML Life attempt to sue or 
hold Medina as a party to the lawsuit to recover damages they must pay the Alanizes resulting from Medina’s actions as their agent? If 
they are for some reason barred or restricted from claiming against Medina because of 
arbitration proceedings, ML Trust and ML Life will almost assuredly claim that 
their rights have been impaired by the arbitration in which they were not 
allowed to participate. But if the trial court allows Medina to be brought into and kept in the lawsuit by ML 
Trust and ML Life, Medina loses the benefit of having arbitrated 
his disputes with the Alanizes.
            
One solution to all of this is the second prong of Grigson’s equitable estoppel construct. Grigson, 210 F.3d at 527. 
The Alanizes should be equitably estopped from asserting they have no arbitration agreement 
with ML Trust and ML Life to the extent the Alanizes 
claim ML Trust and ML Life are liable because of Medina’s misconduct. Their claims that 
Medina wronged 
them are disputes the Alanizes, under the law, agreed 
to arbitrate. The claims against ML Trust and ML Life that rely on Medina’s alleged misconduct depend on “substantially 
interdependent and concerted misconduct” by Medina, ML Trust and ML Life because they are 
based on the same allegations of misconduct. See Brown v. Pac. Life Ins. 
Co., 462 F.3d 384, 398-99 (5th Cir. 2006); Grigson, 210 F.3d at 527. There is little, if any, 
inequity to the Alanizes if ML Trust and ML Life are 
included in the arbitration to the extent noted above. The facts and claims in 
arbitration would remain the same and would pose little, if any, increased 
burden on the Alanizes. The Alanizes are in control of their own fate: they arbitrate 
only facts and matters underlying the misconduct which they allege both against 
Medina and as a 
basis for the companies’ liability to them.
            
In Brown, the Fifth Circuit affirmed the trial court’s determination that 
the Browns, signatories to an arbitration agreement, were equitably estopped under Grigson’s 
second prong from asserting that lack of an arbitration agreement precluded 
their being required to arbitrate with a nonsignatory 
to the agreement. Brown, 462 F.3d at 398-99. In 
doing so, the court did not question the validity of Grigson’s second prong as a basis for applying 
equitable estoppel to require arbitration. To the 
contrary, the court noted that “[t]his circuit does not stand alone in approving 
the use of equitable estoppel against a non-party to 
an arbitration agreement” and cited cases from the Fourth, Seventh, Eighth, and 
Eleventh federal circuits. Id. at 398 
n.9.
            
In Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 305 (Tex. 2006), a case brought 
under the Texas General Arbitration Act[1] as opposed to the FAA, the trial court 
refused to compel arbitration between a signatory and a nonsignatory. The court of appeals affirmed. In holding that 
the trial court abused its discretion in refusing to compel arbitration, we 
discussed the two Grigson prongs for applying 
equitable estoppel. Id. at 305-06. Our decision that the signatory, WMCO, was 
equitably estopped from refusing to arbitrate its 
claims against the nonsignatories was bottomed on 
Grigson’s first prong. Id. at 
306. However, we also addressed, without questioning its validity, the 
second prong of Grigson in refuting the court 
of appeals’ conclusion that WMCO’s claims against the 
nonsignatories were not intertwined with its claims 
against the signatory:
 
            
Finally, the court [of appeals] concluded that WMCO’s 
claims against Meyer and Ford were not intertwined with claims against Bullock. 
This is simply wrong. WMCO’s claims against Meyer and 
Ford are not only intertwined with its claims against Bullock, they have the 
same tap root: WMCO’s assertion that Ford lost its 
right of first refusal.
 
 
Id. at 
307. The one dissenting justice did not argue that the second Grigson prong was not a valid basis under the TAA for 
equitably estopping a signatory from refusing to 
arbitrate with a nonsignatory, but disagreed that 
either prong was satisfied. Id. at 308 
(O’Neill, J., dissenting). Thus less than a year ago we at least implied 
both prongs of Grigson’s equitable estoppel construct apply even in cases subject to the TAA. 
Just as the claims in Meyer had “the same tap root,” to the extent the 
Alanizes’ claims against Medina, ML Trust, and ML Life in this case are based on 
Medina’s alleged misconduct, they have the same 
root system: Medina’s actions.
            
The two-pronged equitable estoppel framework set out 
in Grigson and referenced recently in 
Brown is the Fifth Circuit’s position on equitable estoppel and arbitration pursuant to the FAA. I would conform our decisions to that position in FAA cases until 
either the Fifth Circuit or the United States Supreme Court rejects the 
construct.
            
We have held that “[m]andamus is proper to correct a 
clear abuse of discretion when there is no adequate remedy by appeal, as when a 
party is erroneously denied its contracted-for arbitration rights under the 
FAA.” In re D. Wilson Constr. 
Co., 196 S.W.3d 774, 780 (Tex. 2006). It is within the trial 
court’s discretion whether to apply equitable estoppel 
in cases like this. See Brown, 462 F.3d at 398; Grigson, 210 F.3d at 528. But a trial court “has no 
‘discretion’ in determining what the law is or applying the law to the facts.” 
Meyer, 211 S.W.3d at 308 (quoting Walker v. Packer, 827 S.W.2d 
833, 840 (Tex. 
1992)). On this record I would hold that any discretion in compelling 
arbitration of the Alanizes’ claims against ML Trust 
and ML Life is foreclosed as to claims based on Medina’s actions. Those claims are not just 
arguably substantially interdependent and concerted. They are the same claims 
based on the same facts: Medina’s actions. If those claims are tried by 
the Alanizes and the companies, as opposed to being 
arbitrated with Medina, Medina can hardly avoid 
being a key part of the trial. If he is, one aspect of the federal policy 
favoring arbitration of claims within the scope of a valid arbitration agreement 
will be frustrated: disputes based on Medina’s actions will not be quickly and 
efficiently resolved. The claims in all probability will be arbitrated and then 
tried in the lawsuit to a significant degree.
            
I join parts I and II of the Court’s opinion. I dissent from the Court’s refusal 
to direct the trial court to order the Alanizes’ 
claims against ML Trust and ML Life to arbitration to the extent the claims 
against the companies are based on Medina’s alleged misconduct. As to claims 
against ML Trust and ML Life not based on Medina’s actions, I agree that the trial court 
did not abuse its discretion in failing to order arbitration. If mandamus relief 
were granted to ML Trust and ML Life as well as to Medina, I would not direct 
the trial court to stay the remaining trial proceedings because claims remaining 
in the lawsuit would not involve disputes sent to arbitration. But given the 
Court’s holding that the Alanizes are not required to 
arbitrate any claims with ML Trust and ML Life, I agree that the litigation must 
be stayed pending completion of the arbitration between the Alanizes and Medina because 
both the arbitration and the litigation will encompass claims based on Medina’s actions. 
Accordingly, I also join the Court’s opinion as to part IV.
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
 
OPINION DELIVERED: August 
24, 2007






[1] 
See Tex. Civ. Prac. & Rem. Code §§ 
171.001-.098.