

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00059-CV

MIKE KARLIN AND KARLIN SERVICES, INC., APPELLANTS

V.

DCP MIDSTREAM, LP, APPELLEE

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 40,068-A, Honorable William D. Smith, Presiding

June 6, 2013

## MEMORANDUM OPINION

Before QUINN, C.J. and CAMPBELL and HANCOCK, JJ.

Appellant Mike Karlin brings this interlocutory appeal[1] challenging the trial court's order denying a motion to compel referral to arbitration and abatement of proceedings during the pendency of arbitration.[2]  Appellee, DCP Midstream LP is the plaintiff in the trial court.  We will affirm the trial court's order.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2012).

[2] Karlin Services, Inc. also attempted to appeal the trial court's ruling.  We will dismiss the appeal as to Karlin Services, Inc.

Background

DCP sued Liquid Petroleum Resources, Inc., Kat Energy, LTD, f/k/a Kat Energy Corporation,[3] John Hayhurst and Mike Karlin for conversion and other torts and conspiracy to commit those torts. DCP owns and operates a natural gas pipeline in Hutchinson County, Texas. In the vicinity of the pipeline are mineral leases "owned or controlled" by Liquid Petroleum.

Liquid Petroleum and DCP are parties[4] to a gas purchase contract dated July 1, 2006, by which Liquid Petroleum sells and DCP buys natural gas from designated Liquid Petroleum leases. The contract contains a clause requiring resolution by

During January 2013, Karlin Services, Inc. intervened in the case. Appellee DCP filed a motion to strike the intervention, which the trial court granted by order signed February 19. After the trial court denied the requested referral to arbitration, Karlin Services joined Mike Karlin in the notice of appeal to this Court. Our appellate jurisdiction extends only to final orders or judgments and orders specifically authorized by statute for interlocutory appeal. *In re Roxsane R.,* 249 S.W.3d 764, 774-75 (Tex.App.--Fort Worth 2008, no pet.). In this appeal Karlin Services rightly does not challenge the order striking its plea in intervention as the order is not a final appealable order nor is it included among those interlocutory orders authorized by the Legislature for immediate appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (West Supp. 2012) (listing appealable interlocutory orders). Because it is not a party to the litigation, Karlin Services lacks standing to challenge the trial court's order denying referral to arbitration and abatement. *See Gutierrez v. Zurich Am. Ins. Co.,* No. 07-07-0055-CV, 2007 Tex. App. Lexis 3380 (Tex.App.--Amarillo May 2, 2007, no pet.) (mem. op.) (dismissing appeal of party lacking standing for want of jurisdiction). Mike Karlin remains as appellant.

[3] According to the parties' briefs, with supporting indication in the case summary included in the clerk's record, KAT Energy, LTD was removed from the underlying case by non-suit and order of dismissal.

[4] The original parties to the contract were Liquid Petroleum, as seller, and Duke Energy Field Services, LP, as buyer. Duke Energy is DCP's predecessor-in-interest.

2

arbitration under the Federal Arbitration Act (FAA)[5] of all disputes "arising out of or relating to" the gas purchase contract. The contract also contains a formula for calculating the price of gas sold under its terms. According to the contract, the volume of gas sold is measured by meters owned by DCP and located near the delivery points. Karlin is not a signatory to the contract.

DCP's pleadings allege it "recently conducted meter reviews on its gas pipelines." DCP further alleges from a subsequent physical inspection of the meter and pipeline facilities located on the leases, it "believes [Liquid Petroleum] has converted gas from the DCP pipeline near the [l]eases . . . back to [Liquid Petroleum's] own pipeline and has sold that gas back to DCP for a profit."

By its pleadings, DCP alleges claims for conversion, for theft under the Texas Theft Liability Act, and for fraud.[6] The fraud claim alleges Liquid Petroleum represented to DCP that it owned the gas it was delivering to DCP. The pleadings also allege a conspiracy claim, asserting the defendants other than Liquid Petroleum had knowledge of, agreed to and intended the tortious common objective or course of action, and one or more defendants performed acts in furtherance of the conspiracy.

As a remedy, DCP seeks, *inter alia,* recovery of actual and exemplary damages. In its conversion claim, DCP alleges it is entitled to damages based on the market value of the gas.

---

[5] *See* 9 U.S.C. §§ 1-16.

[6] During the hearing on the motion to compel arbitration, counsel for DCP explained, "The defendants tapped into a DCP pipeline, stole the gas, and then sold it back to us at the meter."

3

During January 2013, Karlin and Karlin Services, Inc. filed a pleading seeking abatement of DCP's lawsuit with referral of the dispute to arbitration.[7] The trial court denied the requested relief, and Karlin appeals.

Analysis

Through his first issue, Karlin asserts the trial court erred by denying the motion to compel arbitration and abate the case during the pendency of arbitration. We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex. 1992); *Teel v. Beldon Roofing & Remodeling Co.,* 281 S.W.3d 446, 448 (Tex.App.--San Antonio 2007, pet. denied); *Cleveland Constr., Inc. v. Levco Constr., Inc.,* 359 S.W.3d 843, 851 (Tex.App.-- Houston [1st Dist.] 2012, pet. dism'd). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Review under this standard requires deference to the factual determinations of the trial court while legal determinations are reviewed *de novo. In re Labatt Food Serv.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

A party seeking to compel arbitration under the FAA must establish the existence of a valid arbitration clause and that the disputed claims fall within the scope of the agreement. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). The initial burden of the party seeking to compel arbitration includes

---

[7] The amended pleading filed in the trial court states it is "agreed to" by Liquid Petroleum and Hayhurst, individually. Those parties did not, however, join in the amended pleading, nor is it signed on their behalf.

4

proving the entity seeking enforcement of the arbitration agreement is a party to the agreement or has the right to compel its enforcement. *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 836 (Tex.App.--Houston [1st Dist.] 2002, no pet.) (combined appeal and original proceeding). Generally, only signatories to an arbitration agreement may compel its enforcement. *Van Zanten v. Energy Transfer Partners, L.P.,* 320 S.W.3d 845, 847 (Tex.App.--Houston [1st Dist.] 2010, no pet.). However, a non-signatory to an arbitration agreement may enforce the agreement's provisions if it "falls into an exception, recognized under general equitable or contract law, that would allow such enforcement." *Mohamed,* 89 S.W.3d at 836 (citing *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 526–28 (5th Cir.2000)).

Because Karlin is not a party to the gas purchase contract, he relies on the doctrine of equitable estoppel to require DCP to arbitrate its claims against him. *See Meyer v. WMCO-GP, LLC,* 211 S.W.3d 302, 305 (Tex. 2006) (discussing *Grigson,* 210 F.3d at 526–28).[8] Like those in *Meyer* and *Grigson*, DCP's suit against Karlin is one by a signatory to an arbitration agreement against a non-signatory. *See Meyer*, 211 S.W.3d at 306. In such a circumstance, equitable estoppel will not permit the signatory plaintiff to "'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 306 (quoting *Grigson*, 210 F.3d at 528). In *Meyer*, the court further reiterated its holding that "a person who seeks by his claim 'to derive a direct benefit from the contract containing the arbitration provision' may be equitably

---

[8] *Grigson*, like our present case, involved arbitration governed by the FAA. 210 F.3d at 527.

estopped from refusing arbitration." 211 S.W.3d at 305 (citing, among others, *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761-62 (Tex. 2006) (per curiam)); *see Hill v. G.E. Power Sys., Inc.,* 282 F.3d 343, 349 (5th Cir. 2002) (emphasizing language quoted in *Grigson,* 210 F.3d at 527, that equitable estoppel applies when signatory plaintiff "must rely on the terms of the written agreement in asserting its claims against the nonsignatory").

We find equitable estoppel inapplicable to DCP's claims against Karlin in this case. Although the contract certainly is alleged,[9] DCP does not by its suit seek to hold Karlin liable pursuant to duties imposed by the gas purchase contract. *Cf. Grigson,* 210 F.3d at 528. The duty to refrain from converting gas belonging to DCP arises from general law, not from the gas purchase contract. *Cf. Vesta Ins. Group*, 192 S.W.3d at 761 (noting obligation not to interfere with existing contract is "a general obligation imposed by law"). Assertion of DCP's conversion or Theft Liability Act claims do not depend on the contract's existence or require proof of its breach.[10] By contrast, the court in *Meyer* first pointed out that the claim of the plaintiff WMCO-GP, LLC against Bullock Motor Co. for breach of the contract containing the arbitration provision relied on

---

[9] As Karlin points out, DCP's pleadings in the trial court refer to the gas purchase contract five times.

[10] "Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Khorshid, Inc. v. Christian,* 257 S.W.3d 748, 758-59 (Tex.App.--Dallas 2008, no pet.) (citing *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971)). The Texas Theft Liability Act provides a civil action for damages against a party committing theft according to the methods defined under the Texas Penal Code. *Brown v. Kleerekoper,* No. 01-11-00972-CV, 2013 Tex. App. Lexis 2122, at *6-7 (Tex.App. Houston [1st Dist.] Mar. 5, 2013, n.p.h.) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (Vernon 2011)); *Ashburn v. Caviness,* 298 S.W.3d 401, 403 (Tex.App.--Amarillo 2009, no pet.) (under the Theft Liability Act, a person who commits theft is liable for the resulting damages).

the contract, and further held that the plaintiff's other claims against the parties seeking to compel arbitration through equitable estoppel "also all depend on the existence of the [contract]." 211 S.W.3d at 305, 307. The same cannot be said of DCP's claims against Karlin.

In *Vesta Ins. Group*, 192 S.W.3d 759, another case in which the plaintiff was a party to a contract containing an arbitration provision, the court agreed with non-signatory defendants that arbitration of the tortious interference claims against them was required. *Id.* at 763-64. As part of its rationale, the court noted that corporations must act through human agents. *Id.* at 762. This case, of course, does not involve claims of tortious interference with the gas purchase contract. More to the point, however, we note that Karlin is not alleged to be an officer or agent of a party to the contract. He is an officer of Karlin Services, Inc., an entity he argues became bound by the contract's terms when it was assigned an interest in leases subject to the contract.

The representation alleged in DCP's fraud claim may refer to a warranty of title contained in the gas purchase contract, but again Karlin is not alleged to be a party to the contract. The only direct allegation against Karlin is contained in DCP's conspiracy allegation. And merely "touching matters" of the contract does not invoke equitable estoppel. *Hill,* 282 F.3d at 348-49.

Courts in Texas also have found estoppel applicable when a plaintiff signatory to an arbitration agreement files suit alleging substantially interdependent and concerted misconduct by a non-signatory and one or more defendants who are signatories. *Brown v. Anderson*, 102 S.W.3d 245, 249 (Tex.App.--Beaumont 2003, pet. denied)

7

(citing *Grigson*, 210 F.3d at 527); *see Meyer*, 211 S.W.3d at 306. Because we have found direct benefits estoppel inapplicable in this case, however, requiring arbitration of DCP's claims against Karlin solely on a concerted misconduct theory would run afoul of the holding in *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding) (noting court has never compelled arbitration "based solely" on concerted misconduct, and declining to do so).[11]

Because we find Karlin has not met his burden to establish the existence of a valid arbitration clause enforceable by him, *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 737, we need not address the issue whether the claims DCP has alleged come within the scope of the arbitration agreement. Nor need we address Karlin's second issue challenging the trial court's denial of a stay pending arbitration.

Conclusion

We dismiss the appeal of Karlin Services, Inc. for want of subject matter jurisdiction. As to Mike Karlin, we affirm the trial court's order denying the motion to compel arbitration and abate the case.

James T. Campbell
Justice

---

[11] *See In re Labatt Food Serv.,* 279 S.W.3d at 644 (noting plaintiffs in *In re Merrill Lynch Trust Co. FSB* were not bound to arbitration agreement under concerted misconduct estoppel because it was not a recognized theory of estoppel under Texas law); *cf. Trammell v. Galaxy Ranch School, L.P.* (*In re Trammell*)*,* 246 S.W.3d, 815, 821 (Tex.App.--Dallas 2008, no pet.) (in case under Texas Arbitration Act, expressing opinion concerted misconduct discussion of *Meyer* was implicitly overruled by *Merrill Lynch*).