

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00469-CV

_____

QIAN "DICK" CAI, Appellant

V.

SUNWARD AMERICA, CORP., Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 23-0965-431

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

This interlocutory appeal follows the trial court's denial of Appellant Qian "Dick" Cai's motion to compel arbitration arising from a suit brought by Appellee Sunward America, Corp. (Sunward) for breach of fiduciary duty and fraudulent inducement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1).

In a sole issue, Cai complains that the trial court abused its discretion by denying his motion to compel arbitration. Because Cai is not a party to the arbitration agreement, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sunward sells and distributes construction equipment, and in 2018, it entered into a contract to sell an excavator to Texas Heavy Equipment, LLC. (TH Equipment).[1] At that time, Cai was a founder, member, and officer of TH Equipment, and he executed the contract (2018 agreement) with Sunward on behalf of TH Equipment to purchase an excavator. The 2018 agreement identified Sunward as the seller and TH Equipment as the buyer, and it contained an arbitration clause for all disputes arising from or in connection with the contract.

---

[1]Sunward NA, a Utah-based company, was the entity that entered into the contract with TH Equipment in 2018. The next year, Sunward NA moved its operations to Texas, reorganized as a Texas limited liability company, and changed its name to Sunward America, Corp. Sunward NA assigned its rights, obligations, claims, and causes of action under the contract to Sunward America, Corp.

In January 2019, Sunward hired Cai to serve as its CEO, and from January 2019 through April 2021, Cai had dual roles as the CEO of Sunward and the President (and majority owner) of TH Equipment. Nearly one year into the 2018 agreement, TH Equipment had not made any further payments to Sunward for the excavator. In October 2019, in his capacity as Sunward's CEO, Cai negotiated with TH Equipment's Chief Operating Officer (COO) to amend the terms of the 2018 agreement and signed a new 2019 agreement (Agreement) for the excavator.

By September 2021, TH Equipment had made only one additional payment for the excavator, and the remaining balance went unpaid. In February 2023, Sunward sued TH Equipment and its COO for breach of contract for failing to pay the remaining balance on the excavator.[2] Sunward also sued Cai individually for breach of fiduciary duty and fraudulent inducement, alleging that he had failed to protect Sunward's interests in the excavator sold to TH Equipment.

Cai filed a Rule 91a motion to dismiss and contended, among other things, that dismissal was warranted due to the Agreement's arbitration clause. Sunward responded that Cai was not a party to the Agreement and explained that its causes of action against Cai sounded in tort. In April 2023, the trial court denied Cai's Rule 91a motion.

---

[2]TH Equipment did not respond to Sunward's suit, and the trial court entered a default judgment against it.

Cai filed a counterclaim against Sunward, and by the next month, the trial court signed its first scheduling order and notice of trial setting. Later that year, after Sunward took Cai's deposition, he filed a no-evidence motion for summary judgment. A few months later, Cai also moved to consolidate both suits and filed pretrial disclosures. The trial court ultimately denied Cai's motion to consolidate, dismissed his counterclaim, and assigned the case to trial.

Less than a week before the scheduled trial date in October 2024, Cai moved to compel arbitration and to stay proceedings. Sunward did not respond or object to Cai's motion, yet the trial court denied his motion to compel arbitration. This appeal followed.

## III. STANDARD OF REVIEW

We review the trial court's denial of a motion to compel arbitration under an abuse-of-discretion standard. *Apache Corp. v. Wagner*, 621 S.W.3d 285, 296 (Tex. App.—Fort Worth 2018) (mem. op.), aff'd, 627 S.W.3d 277 (Tex. 2021). But we review de novo the trial court's legal determinations, including whether the scope of the agreement encompassed the plaintiff's claim and whether a nonsignatory could compel or be compelled to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Leland Pennington, Inc. v. Bulls*, No. 02-20-00282-CV, 2021 WL 832690, at *2 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.). When, as here, the trial court does not specify the basis for its order denying arbitration, we must uphold

the trial court's ruling if it is supported by any legal ground asserted below. *Leland Pennington*, 2021 WL 832690, at *5.

## IV. DISCUSSION

Cai argues that the trial court abused its discretion by denying his motion to compel arbitration because (1) Sunward did not respond or object, (2) no party disputed the existence of the arbitration agreement, and (3) Sunward's suit arose out of TH Equipment's alleged breach and was contained within the broad arbitration clause. Because Cai is not a party to the Agreement and because Sunward's claims against him do not fall within the scope of the arbitration clause, we disagree.

### 1. Applicable Law

When relying on a contract to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement. Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) (stating that "[w]hen relying on a contract to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement," including whether a nonsignatory may enforce an arbitration agreement's terms). Second, the claim at issue must fall within the scope of the arbitration agreement. *Id.* There is a strong presumption favoring arbitration; however, that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *Webster*, 128 S.W.3d at 227. Arbitration agreements are interpreted under traditional contract principles. *Id.*

5

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding) (per curiam). Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms, and generally, the parties must sign arbitration agreements before being bound by them. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). The initial burden of establishing the existence of a valid arbitration agreement includes proving that the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## 2. No Valid Arbitration Agreement between Cai individually and Sunward

Neither party disputes that Sunward and TH Equipment are both signatories under the Agreement, which contains an arbitration clause. The issue is whether a valid arbitration agreement exists between Sunward and Cai in his individual capacity.

We first look at whether Cai is a party or signatory to the Agreement's arbitration clause because arbitration agreements apply to nonsignatories only in rare circumstances. *V3 Constr. Co., LLC v. Butler*, No. 02-20-00171-CV, 2021 WL 519912, at *4 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.). Whether a nonsignatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide. *Rubiola*, 334 S.W.3d at 223–24. In making the

6

determination of whether nonsignatories are bound, Texas law has articulated several theories that permit binding a nonsignatory to arbitrate. *Jody James Farms, JV*, 547 S.W.3d at 633. Specifically, courts have articulated six scenarios in which arbitration with nonsignatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Id.*

A review of the Agreement reveals that it was "made by and between the buyer and seller"—TH Equipment and Sunward. A valid arbitration agreement undeniably exists for disagreements between Sunward and TH Equipment, but the Agreement cannot be reasonably read to encompass disagreements between the signatories and other parties. Cai concedes that the Agreement containing the arbitration clause makes no express provision for certain nonsignatories to be considered parties and does not otherwise expressly extend the Agreement's benefits to third parties.

Cai had the initial burden of showing that he had a valid arbitration agreement with Sunward, and he could not prevail merely by demonstrating that a valid arbitration agreement existed between Sunward and TH Equipment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a)(1). To the extent that Cai's argument relies on a theory that he could compel Sunward to arbitrate simply because it had a valid arbitration agreement with TH Equipment, we conclude that argument is without

merit: because Cai is not a signatory[3] to the Agreement, he is not a party to the arbitration clause. Accordingly, we next turn to whether Cai established an alternative theory that could compel Sunward to arbitrate its claims against him.

Cai had to show that an accepted theory applies to this case that allows him to enforce the Agreement's arbitration clause. *See Cappadonna Elec. Mgmt. v. Cameron Cnty.*, 180 S.W.3d 364, 371 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). In the trial court, Cai filed several motions[4] that referenced or attempted to invoke arbitration. Yet, none of his motions enunciated any recognized grounds for him, as a nonsignatory, to enforce the arbitration clause against Sunward. Instead, Cai simply asserted that the claims against him arose from the Agreement and that the arbitration clause should apply.

Cai relies upon *In re Vesta Insurance Group, Inc.* in support of his position that Sunward, as a signatory plaintiff, cannot avoid arbitration by suing a counter-signatory's agents, officers, and affiliates. 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding). This reliance is misplaced. In *Vesta Insurance Group, Inc.*, a signatory plaintiff's suit involved a nonsignatory's conduct on behalf of another signatory. *Id.*

---

[3]Cai acknowledges in his brief that he signed "the governing 2019 Contract in his capacity as CEO" of Sunward, not in his individual capacity. Cai's deposition testimony and the signature on the contract for "The Seller . . . Sunward N.A. LLC," supports his acknowledgment that he signed the 2019 contract on Sunward's behalf.

[4]Cai filed a Rule 91a motion to dismiss, a reply in support of his motion to dismiss, a motion to consolidate, and a motion to compel arbitration.

Here, Sunward's suit against Cai is for his conduct as Sunward's CEO—not for his role as an agent, officer, affiliate, or signatory of TH Equipment. The holding in *Vesta Insurance Group, Inc.* is distinguishable from the circumstances in this appeal because Sunward is not attempting to circumvent the arbitration agreement by suing Cai for nonsignatory conduct on behalf of TH Equipment, but rather for his actions as Sunward's agent. *See id.*

Further, the trial court did not abuse its discretion by denying Cai's motion because he failed to articulate any of the six recognized scenarios in which arbitration with nonsignatories may be required. Accordingly, because Cai failed to show that he was a party—either as a signatory or bound nonsignatory—to the Agreement, he has no right to enforce the arbitration clause with Sunward. *See Mohamed*, 89 S.W.3d at 836.

### 3. The Scope of the Arbitration Clause does not Include Sunward's Claims Against Cai

Assuming Cai had proven the existence of a valid arbitration agreement between him and Sunward, he cannot compel Sunward to arbitrate its claims against him because they fall outside the scope of the arbitration clause.

The relevant portion of the arbitration clause reads, "All disputes arising from or in connection with the Contract shall be settled through friendly negotiations. In case no settlement can be reached through negotiations, the case shall then be submitted for arbitration."

9

Here, Sunward's suit alleges the tort of breach of fiduciary duty, a general, non-contract obligation, against Cai. *See Jody James Farms, JV*, 547 S.W.3d at 638. A fiduciary duty generally "arises from the relationship of the parties and not from the contract." *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984). Sunward's claims are based on Cai's acts and omissions while he served as Sunward's CEO and his alleged failure to protect Sunward's assets. Put another way, the suit arises out of Cai's relationship and employment status with Sunward—not under the Agreement or as an agent, employee, or signatory of TH Equipment.

When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability "arises solely from the contract or must be determined by reference to it"—equity prevents a person from avoiding the arbitration clause that was part of that agreement. *Jody James Farms, JV*, 547 S.W.3d at 637. But, "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law," a nonsignatory's invocation of arbitration is not implicated even if the claim refers to or relates to the contract or would not have arisen "but for" the contract's existence. *Id.* (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 557–28 (Tex. 2015)).

Even though Sunward's suit against Cai might not have existed but for the Agreement, its claims relied on his duties independent from it. Also, Sunward might seek a measure of loss that equates to the amount of the Agreement's loss, but

arbitration is not compelled simply because "the claim *refers* to . . . the contract." *Id.* Rather than rely on the Agreement, Sunward's suit premises Cai's liability based on his breach of fiduciary duty and fraudulent inducement, which are both sounded in tort. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (emphasis added) (discussing that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself). Therefore, because Sunward's claims against Cai are separate and sounded in tort, we conclude that the dispute falls outside of the arbitration clause.[5]

### 4. Sunward's Lack of Response to Cai's Motion to Compel Arbitration

Cai also argues that the trial court abused its discretion by denying his motion to compel arbitration because Sunward did not respond or object to the motion. However, we note that Sunward did oppose Cai's argument for arbitration in its response to Cai's Rule 91a motion to dismiss. Specifically, Sunward contended that the arbitration agreement was inapplicable to its claims against Cai because Cai was not a party to the Agreement. In considering Cai's motion and Sunward's response, the trial court ultimately denied Cai's Rule 91a motion.

---

[5]Sunward asserts that even if Cai could show that its claims against him are arbitrable, he waived any right to compel arbitration by substantially invoking the judicial process. However, because we conclude that Cai is not a party under the Agreement and that Sunward's claims against him falls outside of the arbitration clause, we need not discuss whether Cai substantially invoked the judicial process. *See* Tex. R. App. P. 47.1.

11

Similar to a motion for summary judgment, and subject to the same evidentiary standards, the party alleging an arbitration agreement must present proof that the dispute is subject to arbitration (through affidavits, pleadings, discovery, or stipulations), and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992).

Absent evidence raising a genuine issue of material fact—in which case the trial court must conduct an evidentiary hearing to resolve the factual dispute—the trial court may summarily determine whether to compel arbitration. *See Jack B. Anglin Co.*, 842 S.W.2d at 269; *see also In re Est. of Guerrero*, 465 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc).

As we have discussed, Cai did not demonstrate in any of his filings that he was either a signatory or bound nonsignatory with rights and obligations under the Agreement. Further, Sunward's pleadings and responses plainly establish that its claims against Cai are independent, non-contract, and general torts. Therefore, we conclude that the trial court could have determined that, even without any further response from Sunward, Cai did not meet his burden to raise a fact issue on whether the dispute was subject to arbitration. *See Jack B. Anglin Co.*, 842 S.W.2d at 269.

12

Accordingly, because Cai is not a party to the Agreement and Sunward's suit is not sounded in contract, we hold that the trial court did not abuse its discretion by denying Cai's motion to compel arbitration.

## V. CONCLUSION

Having held that the trial court did not abuse its discretion, we affirm the trial court's denial of Cai's motion to compel arbitration.

/s/ Brian Walker

Brian Walker
Justice

Delivered: April 10, 2025