**Opinion issued December 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01032-CV

———————————

**STEVE HOLMES, DEBBIE HOLMES, CLINTON HOLMES, DANA ATKINSON, JERRY SMITH, GREG EVANS, PENNY EVANS, AND GARY EVANS, Appellants**

**V.**

**JOHN L. GRAVES AND HARPER TRAMMELL, Appellees**

———————————

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-23495**

———————————

## MEMORANDUM OPINION

Steve Holmes, Debbie Holmes, Clinton Holmes, Jerry Smith, Dana Atkinson, and Greg Evans—in their capacity as purported directors and members

of the Houston Aeronautical Heritage Society, Inc.—and Penny Evans and Gary Evans—(collectively "Plaintiffs") in their capacity as members of HAHS—bring this interlocutory appeal challenging the trial court's denial of their motion to compel arbitration in the underlying suit against John L. Graves and Harper Trammell (collectively "Defendants") regarding the governance and operation of HAHS. Because we conclude that the trial court did not err by denying Plaintiffs' motion to compel arbitration, we affirm.

## Background

The mission of HAHS is to "preserve, renovate and/or restore the original purpose-built airport terminal building known as the Houston Municipal Airport Building and/or The 1940 Air Terminal, and to operate within it, and nearby structures, a museum of civil aviation[.]" The operation and governance of HAHS has been the subject of multiple lawsuits, all of which have been filed in or transferred to the same district court.

In 2011, HAHS, through three of its directors (including Gary Evans), filed a lawsuit against six of its other directors (including Graves and Trammell) seeking to (1) enjoin a special meeting of the Board of Directors called for the purpose of appointing new directors and (2) obtain a declaration that a special meeting of members, rather than a special meeting of the Board, was required for the appointment of new directors under HAHS's bylaws. In its final summary

judgment in the 2011 lawsuit, the trial court made the following findings and conclusions:

- HAHS shall take nothing on any of its claims against Graves, Trammell, or the other defendant directors;

- Graves, Trammell, and the other defendant directors were current members of the HAHS Board;

- The bylaws submitted by the defendant directors as part of their pleadings in the 2011 lawsuit were the "current, applicable and effective bylaws that govern the affairs of [HAHS]";[1] and

- The special meeting called by the defendant directors for the purpose of appointing new directors was authorized by the bylaws.

As part of its final judgment, the trial court also vacated an agreed temporary injunction in the 2011 lawsuit that prohibited the calling of special meetings.[2]

The day after the trial court rendered its final judgment in the 2011 lawsuit, Graves, Trammell, and the other defendant directors noticed a special meeting of the Board for the purpose of addressing "[t]he amendment and restatement of the bylaws with immediate effect" and "[c]onsideration of and a vote upon the proposed removal" of the directors who had been plaintiffs in the 2011 lawsuit. The special meeting was called for April 20, 2012. The minutes of the April 20 meeting recount that all directors (including the directors who were plaintiff and

---

[1] For purposes of this appeal, we refer to these bylaws as the "original bylaws."

[2] An appeal from the final judgment in the 2011 lawsuit is currently pending in this Court. Today, we also issue our opinion in that appeal.

3

defendants in the 2011 lawsuit) were present and there was a quorum. The minutes recount that the following events occurred:

> Discussion was opened pertaining to the amended bylaws which have been proposed by the Majority Directors [defendant directors in the 2011 lawsuit]. John Graves made the motion that the amended bylaws be accepted; Oscar Nipper seconded . . . A vote was called to adopt the proposed amended bylaws by Harper Trammell.[3] The results were 6 in favor (Morris, Trammell, High, Nipper, M. Evans, Graves) and 3 opposed (G. Evans, D. Coats by proxy and K. Coats by proxy [plaintiff directors in the 2011 lawsuit]). The motion to accept the proposed bylaws passed.

A resolution removing the plaintiff directors in the 2011 lawsuit from the Board was also passed, with the same six directors voting in favor of the resolution and the same three directors opposing it.

A quorum of HAHS's members participated in a members meeting the following day at which the directors' actions at the special meeting were ratified, including the ratification and adoption of the amended and restated Bylaws. Relevant to this appeal, the arbitration clause contained in the original bylaws was omitted from the amended and restated bylaws.

The plaintiff directors in the 2011 lawsuit called a competing members' meeting for the purpose of electing new directors. That meeting occurred immediately after the special members' meeting discussed above. The record does not establish the attendance at this meeting. However, Steve Holmes, Debbie

---

3   For purposes of this appeal, we refer to these bylaws as the amended and restated bylaws.

4

Holmes, Clinton Holmes, Dana Atkinson, Jerry Smith, and Greg Evans contend that they were duly appointed as members of the Board at that meeting. The appointment of these new directors gave rise to the dispute regarding the constitution of HAHS's Board, with two separate groups of directors (Plaintiffs and Defendants here) claiming authority to act on HAHS's behalf.

After their purported election as directors, Plaintiffs filed the underlying lawsuit (the 2012 lawsuit), seeking substantially the same injunctive and declaratory relief that the plaintiff directors had sought in the 2011 lawsuit. Indeed, Plaintiffs characterize the 2012 lawsuit as a "continuation of" the 2011 lawsuit. They allege that Defendants "attempted to supplant the by-laws determined to be in force in the [Judgment from the 2011 lawsuit] with a new set of by-laws [which] strip all of HAHS members of their right to vote, take away all privileges of membership so that HAHS members will no longer be 'Members' under the Texas Business Organizations Code, and give the [Defendants] absolute power to dissolve any membership, at any time, for any reason, 'or no reason at all.'"

Plaintiffs sought to enjoin Defendants from the following conduct:

1. Interfering with the day to day operations of the [HAHS] 1940 Air Terminal Museum;

2. Interfering with the governance of HAHS by its Board of Directors and Officers;

5

3. Interfering with the rights and privileges of HAHS' members as provided by HAHS' articles of incorporation, bylaws and the Texas Business Organizations Code[;]

4. Otherwise interfering with the status quo[; and]

5. Damaging, destroying, concealing, and/or disposing of records or other items which may be relevant to the present suit.

Plaintiffs also sought declaratory relief—specifically, a declaration regarding "the rights, responsibilities and obligations of the parties" and a declaration regarding "the current officers and directors of [HAHS], and its bylaws."

Defendants answered the 2012 lawsuit, filed a counterclaim seeking a declaration that, among other things, Plaintiffs have no authority to prosecute their claims in the 2012 lawsuit, and made requests for injunctive relief in the 2011 lawsuit on the ground that Plaintiffs' actions as purported members of the HAHS Board were inconsistent with the final judgment in that lawsuit. Pursuant to Defendants' request, the trial court, as part of the 2011 lawsuit, entered a temporary restraining order and a temporary injunction. The temporary injunction includes the following fact findings:

- [O]n April 20, 2012, a special meeting of the HAHS Board of Directors was held, in accordance with the same notice procedures previously approved by the Court, and at which meeting, among other things, [the plaintiff directors in the 2011 lawsuit] were removed and replaced as officers and directors of HAHS and that subsequently [Gary] Evans attended a special meeting of members on April 21, 2012 and purported to elect another Board of Directors[;]

6

- [T]he April 21, 2012 election of directors was inconsistent with and contrary to the Court's Final Judgment[;]

- [S]ubsequent to the April 21, 2012 special meeting of members, Messrs. Evans and Coats, and persons acting at the direction or in concert with them, including Steve Holmes, Debbie Holmes, Jerry Smith, Dana Atkinson, Greg Evans, Penny Evans, and Clinton Holmes [Plaintiffs here], have undertaken certain actions inconsistent with the Final Judgment, since such actions were premised upon the April 21, 2012 election of another Board of Directors[; and]

- [T]o the extent that it is brought in [Plaintiffs'] capacity as purported directors or on behalf of [HAHS], [the 2012 lawsuit] is inconsistent with the Court's Final Judgment, and will harm [HAHS] by creating uncertainty with the public, HAHS donors, HAHS staff and HAHS volunteers over who governs HAHS.

Based on these findings and its power to enforce its judgment, the trial court ordered that "Gary Evans . . . and . . . persons in active concert or participation with [him] – including members of the supposed Board elected at the April 21, 2012 members meeting (including Steve Holmes, Debbie Holmes, Jerry Smith, Dana Atkinson, Greg Evans, Penny Evans, Clinton Holmes, and Christopher Gilbert) . . . are hereby enjoined from undertaking any actions based on the purported election of directors at the April 21, 2012 special meeting of members."

As part of the pretrial proceedings in the 2012 lawsuit, Plaintiffs requested that the trial court grant them a temporary restraining order and temporary

7

injunction. The trial court denied the requested relief.[4] After the denial of their request for injunctive relief, Plaintiffs filed a motion to compel arbitration under the arbitration clause contained in the original HAHS bylaws. Defendants resisted arbitration on the grounds that the amended and restated bylaws do not include an agreement to arbitrate and, by waiting to compel arbitration until after the trial court denied their request for temporary injunctive relief, Plaintiffs had waived their right to arbitration. The trial court denied Plaintiffs' motion to compel arbitration, and this appeal followed.

**Waiver of Arbitration**

Plaintiffs assert that the trial court erred in refusing to compel arbitration of claims that are subject to a valid arbitration agreement. Specifically, Plaintiffs contend that (1) their injunctive and declaratory-relief claims are subject to the arbitration clause contained in the original bylaws, (2) they complied with any conditions precedent to arbitration, and (3) they did not waive their right to arbitrate. We do not address whether Plaintiffs' claims are subject to an agreement to arbitrate because we conclude that Plaintiffs waived their right, if any, to arbitrate.

---

[4] The record does not include a transcript of any hearing on Plaintiffs' request for a temporary restraining order and temporary injunctive relief.

8

Waiver is a question of law that this Court reviews de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703−04 (Tex. 1998) (per curiam). Although both state and federal law favor arbitration, arbitration rights are contractual and, like any other contractual right, may be waived. *See In re Bruce Terminix*, 988 S.W.2d at 704. There is, however, a strong presumption against the waiver of those rights. *See id.*; *see also In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006).

When parties have not expressly waived their arbitration rights, waiver may be implied from a party's unequivocal conduct. *Perry Homes*, 258 S.W.3d at 593 (citing *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005); *First Valley Bank v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); and *Equitable Life Assurance Soc'y v. Ellis*, 152 S.W. 625, 628 (Tex. 1913)). Courts determine waiver under the case-specific facts and, looking to the totality of the circumstances, inquire whether a party has substantially invoked the judicial process to an opponent's detriment. *See Perry Homes*, 258 S.W.3d at 589–92. Substantial invocation of the judicial process "may occur when the party seeking arbitration actively has tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration." *N.W. Constr. Co., Inc. v. Oak Partners, L.P.*, 248 S.W.3d 837, 848 (Tex. App.—Fort Worth 2008, pet.

9

denied). "Prejudice" is inherent unfairness caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Perry Homes*, 258 S.W.3d at 597.

## A.    Substantial invocation of the litigation process

The Texas Supreme Court has deemed that the following acts, standing alone, do not amount to a substantial invocation of the litigation process: filing suit; requesting initial discovery; noticing, but not taking a deposition; and taking four depositions. *Id.* at 590. However, the combined acts of conducting full discovery, filing motions going to the merits, and seeking arbitration "only on the eve of trial" do constitute substantial invocation of the judicial process. *Id.* (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006)). Because this case does not fit squarely into any of those scenarios, we consider the following factors in the context of the totality of the circumstances:

1.    whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded);

2.    when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration;

3.    the amount of pretrial activity related to the merits rather than arbitrability or jurisdiction;

4.    the amount of discovery conducted and by whom;

5.    whether the discovery went to the merits rather than arbitrability or jurisdiction;

6.    whether the movant sought judgment on the merits; and

10

7.    what discovery is available in arbitration.

*See id.* at 590−92; *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141 (Tex. App.—Dallas 2009, no pet.).

The facts regarding the status of the proceedings and knowledge of the arbitration clause are not disputed by the parties here. Turning to the first factor, the movants for arbitration in the 2012 lawsuit are Plaintiffs. The 2012 lawsuit is the second lawsuit filed by one of the Plaintiffs, Gary Evans, against Defendants in the trial court arising from disputes over the governance and operation of HAHS, and, the trial court, in the 2011 lawsuit, determined that the other Plaintiffs here were acting in "active concert or participation with" Evans following the rendition of the final summary judgment in that case.

With regard to the second factor, the amount of delay, the record shows a period of approximately five months between the time Plaintiffs filed the 2012 lawsuit and the time they sought to compel arbitration. Plaintiffs do not dispute that they knew the dispute arguably was covered by an arbitration clause at the time they filed the lawsuit—the plaintiff directors in the 2011 lawsuit had moved for and were denied arbitration under the same clause, and Plaintiffs here have described this lawsuit as a "continuation of" the 2011 lawsuit.[5] Far greater delays

---

[5]    If the 2012 lawsuit is treated as a continuation of the 2011 lawsuit, the request for arbitration here occurred more than nine months after arbitration was sought in the

11

have been insufficient to constitute waiver of arbitration rights in other cases, so the delay here, alone, is not enough to find waiver. *See, e.g.*, *In re Vesta*, 192 S.W.3d at 763 (litigating for two years in trial court insufficient to overcome strong presumption against waiver). Because Plaintiffs elected to file the 2012 lawsuit, we nevertheless conclude that the first two factors listed above weigh in favor of a waiver finding.

With regard to the conduct of discovery, the record is limited. The only discovery contained in the record are the requests for disclosure propounded by Plaintiffs as part of their original, first amended, and second amended petitions. Those requests for disclosure pertained only to the basic discoverable information listed in Texas Rule of Civil Procedure 194.2. *See* TEX. R. CIV. P. 194.2. The record does not indicate whether Defendants responded to the requests or whether other, more merits-based discovery was propounded by Plaintiffs. Neither does the record indicate that Plaintiffs have obtained information through pretrial discovery that would not otherwise be discoverable in arbitration. Thus, the fourth, fifth, and seventh factors—all of which regard discovery—weigh against a finding of waiver. We note, however, that the weight of these particular factors in this case is not great. Given that the parties have been embroiled in litigation over the operation and governance of HAHS for some time in another lawsuit, that this lawsuit is a

2011 lawsuit and five months after the final summary judgment in the 2011 lawsuit.

12

continuation of the previous suit, and that the trial court already made some factual determinations that are relevant to the merits of Plaintiffs' claims here, it is not surprising that the parties did not jump immediately into extensive discovery.

Addressing next the third factor, the merits activity in the case, the record shows that Plaintiffs delayed invoking their arbitration rights until after they suffered defeat on their merits attack. The trial court has already determined factual issues relevant to Plaintiffs' claims as part of the temporary injunction proceedings in the 2011 lawsuit. And, in the 2012 lawsuit, Plaintiffs requested that the trial court make a judicial determination regarding their claim for injunctive relief. They moved to compel arbitration only after being denied merits-based injunctive relief. "An attempt to resolve the merits and still retain the right to arbitrate is clearly impermissible." *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *In re Citigroup Global Mkts., Inc.*, 202 S.W.3d 477, 482 (Tex. App.—Dallas 2006, orig. proceeding)).

We reject Plaintiffs' contention that requesting injunctive relief from the trial court was not a specific or deliberate act that was inconsistent with the right to arbitrate because injunctive relief is not permitted under the applicable rules of arbitration. Plaintiffs did not establish what rules would govern any arbitration. Moreover, the clause in the original bylaws under which Plaintiffs sought arbitration does not include any limit on the arbitrator's authority. This Court has

13

determined that arbitrators do not exceed their authority in awarding injunctive relief in the absence of any language in the arbitration clause specifically prohibiting the arbiters from granting such relief. *See J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 36 (Tex. App.—Houston [1st Dist.] 1995, no writ). Factors three and six thus weigh in favor of a waiver finding.

Weighing all these factors under the case-specific facts here, we conclude that the totality of the circumstances demonstrates an attempt by Plaintiffs to "have it both ways." *See In re Citigroup Global Mkts.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (quoting *Perry Homes*, 258 S.W.3d at 597). Such circumstances demonstrate that Plaintiffs had substantially invoked the litigation process before seeking to compel arbitration.

## B.     Prejudice from substantial invocation of the litigation process

Merely invoking the litigation process to a significant extent is not sufficient, however, in itself, to find waiver of an arbitration agreement. Because of the "strong presumption" against waiver, waiver of arbitration by substantially invoking the judicial process compels a "high" evidentiary "hurdle." *Perry Homes*, 258 S.W.3d at 590; *see also In re Bank One, N.A.*, 216 S.W.3d at 827 (recognizing "strong" presumption against waiver) (citing and quoting *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)). The dispositive inquiry, therefore, is whether Defendants established that Plaintiffs' switching from litigation to

arbitration produced the necessary degree of prejudice or detriment to warrant waiver of arbitration. *See Perry Homes*, 258 S.W.3d at 595 (declining to vacate requirement that party claiming waiver premised on substantial invocation of judicial process demonstrates prejudice). Prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position. *See, e.g.*, *id.* at 597 (defining prejudice for purposes of waiver of arbitration as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position") (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). Prejudice is more easily shown when a party delays his request for arbitration and in the meantime engages in pretrial activity inconsistent with the intent to arbitrate. *Id.* at 599.

Defendants contend that "[i]f this Court were to require [Defendants] to arbitrate the last iteration of [Plaintiffs'] claims—claims [Defendants] have already successfully defended in the 2011 [l]awsuit—it would not only be authorizing the type of 'switching between litigation and arbitration' that is inherently prejudicial, but it would also be encouraging the very type of forum shopping that Texas courts repeatedly deem to be a violation of public policy." We agree. The substantial litigation between these parties related to the merits of Plaintiffs' claims weighs heavily in favor of a finding of prejudice. The trial court that is presiding over Plaintiffs' claims in the 2012 lawsuit presided over the 2011 lawsuit. In the 2011

lawsuit, the trial court made factual determinations regarding the validity of the respective meetings at which the amended and restated bylaws were adopted and at which Defendants and Plaintiffs were appointed directors. Requiring Defendants to defend against Plaintiffs' claims before a new factfinder after Defendants have already successfully defended substantially similar litigation results in prejudice to Defendants. Plaintiffs' attempts to have an arbitrator reexamine matters already decided by the trial court in the 2011 lawsuit suggests an effort to duplicate litigation rather than avoid it. The record supports a conclusion that Defendants would be prejudiced by Plaintiffs invocation of their arbitration rights, if any, at this stage of the proceedings. We therefore conclude that Plaintiffs have waived their right, if any, to seek arbitration of their claims in this lawsuit.

## Conclusion

We affirm the trial court's denial of Plaintiffs' motion to compel arbitration.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

16