ACCEPTED
03-13-00498-CV
6107077
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 11:39:01 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00498-CV

# In the
# Third Court of Appeals
# at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 11:39:01 PM
JEFFREY D. KYLE
Clerk

RONNIE LAWSON AND LEAH LAWSON,

*Appellants*,

v.

BENJAMIN KEENE, KRISTI KEENE, GRETCHEN GAYLE GULLEKSON,
DAYNA MARIE TWYMAN AND KWI-8, L.L.C.
D/B/A KELLER WILLIAMS REALTY,

*Appellees*.

On Appeal from the 200th District Court
of Travis County, Texas

# MOTION FOR PANEL REHEARING

Don Cruse
State Bar No. 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca Street,
  Suite 110-436
Austin, Texas 78701
[Tel.] (512) 853-9100
[Fax] (512) 870-9002
don.cruse@texasappellate.com

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

Table of Contents .................................................................................i

Index of Authorities..............................................................................ii

Rehearing Argument ..............................................................................1

I.     Even the Partial Record Has Enough Evidence. .......................................1

     A.     The opinion focuses on immaterial facts. ...................................1

     B.     The evidence attached to the Lawsons' response does show fact questions, especially if reasonable inferences are (as required) drawn in their favor. ...............................................................3

II.     Segregation of Fees Is a Substantive Defect in Proof, Not a Question of Admissibility of Evidence .......................................................................5

     A.     There are no "magic words" to preserve this issue, which is not a matter of admissibility but sufficiency .....................................5

     B.     The trial court did rule by awarding these fees. ..........................7

III.     "Direct Benefits Estoppel" Does Not Support This Judgment. ...............8

     A.     This was not a summary-judgment ground below. .....................8

     B.     Leah's claims do not fit "direct benefits estoppel"....................8

IV.     The Panel Failed To Address Reconsideration. ......................................11

Prayer ...............................................................................................14

Certificate of Service ............................................................................15

Certificate of Compliance.......................................................................15

# INDEX OF AUTHORITIES

## Cases

*Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*,
299 S.W.3d 106 (Tex. 2009) ....................................................10

*Am. Cas. Co. v. Neuwirth*, No. 03-10-00005-CV, 2011 Tex. App. LEXIS 4069,
2011 WL 2139121 (Tex. App.—Austin May 26, 2011, no pet.) ...............7

*Barina v. Barina*, No 03-08-00341-CV, 2008 Tex. App. LEXIS 8747,
2008 WL 4951224 (Tex. App.—Austin Nov. 21, 2008, no pet.)........5, 7-8

*Chambers v. Ochiltree*, No. 03-04-00143-CV, 2014 Tex. App. LEXIS 11046,
2004 WL 2814288 (Tex. App.—Austin Dec. 9, 2004, no pet.) .................6

Daniels v. Wells Branch Mun. Util. Dist., 2010 Tex. App. LEXIS 8857,
2010 WL 4367017 (Tex. App.—Austin Nov. 5, 2010, no pet.).................6

*Eagle Fabricators, Inc. v. Rakowitz*,
344 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ...........9

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*,
458 S.W.3d 502 (Tex. 2015) .....................................................9

*Garst v. Reagan*, No. 03-13-00243-CV,
2014 WL 902554, 2014 Tex. App. LEXIS 2494
(Tex. App.—Austin Mar. 6, 2014, no pet.) ............................................12

*Horvath v. Hagey*, No. 03-09-00056-CV, 2011 Tex. App. LEXIS 3451
(Tex. App.—Austin May 6, 2011, no pet.) (op. on reh'g) ......................6-7

*Hruska v. First State Bank*,
747 S.W.2d 783 (Tex. 1988) ....................................................10

*In re Kellogg Brown & Root, Inc.*,
166 S.W.3d 732 (Tex. 2005) .....................................................9

*In re Vesta Ins. Group, Inc.*,
192 S.W.3d 759 (Tex. 2006) .....................................................9

*In re Weekley Homes, L.P.*,
 180 S.W.3d 127 (Tex. 2005) .......................................................9

*Kleas v. BMC West Corp.*, No. 03-05-00190-CV, 2008 Tex. App. LEXIS 9506
 (Tex. App.—Austin Dec. 19, 2008, pet. denied).....................................6

*Lesieur v. Fryar*,
 325 S.W.3d 242 (Tex. App.—San Antonio 2010, pet. denied) ..........10, 11

*New Amsterdam Cas. Co. v. Texas Industries, Inc.*,
 414 S.W.2d 914 (Tex. 1967) ......................................................10

*Rachal v. Reitz*,
 403 S.W.3d 840 (Tex. 2013) ......................................................11

*Sierra Associate v. Hardeman*, No. 03-0800324-CV, 2009 WL 416465
 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) .........................11

*Tony Gullo Motors I, LP v. Chapa*,
 212 S.W.3d 299 (Tex. 2006) .......................................................7

*Vernco Constr., Inc. v. Nelson*,
 460 S.W.3d 145 (Tex. 2015) (per curiam) ........................................12-13

*Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.*,
 55 S.W.2d 1032 (Tex. Comm'n App. 1932, judgm't adopted) ................10

## Constitutions, Statutes, and Rules

TEX. ADMIN. CODE §§531.1 & 531.2 .................................................2

TEX. ADMIN. CODE §537.11(c).......................................................11

TEX. BUS. & COMM. CODE §27.01 .................................................2-3

TEX. R. APP. P. 33.1...............................................................5, 7

TEX. R. APP. P. 47.1...............................................................13

TEX. R. CIV. P. 166a(c)............................................................8

# REHEARING ARGUMENT

## I.  EVEN THE PARTIAL RECORD HAS ENOUGH EVIDENCE.[1]

### A.  The opinion focuses on immaterial facts.

Rather than ask if these defendants actually did know they were making up numbers and did fail to disclose the context that a reasonable buyer would need to understand the information provided, the Court asks about broad generalities like whether someone "should have" counted the sunroom or whether a TCAD report is "official" such that "any contrary representation is false." (Op. 5). But those are straw men erected by the Appellees, not elements the Lawsons need to prove under Texas law. Distracted by those wrong questions, the Court was led away from the right sort of evidence: (1) the defendants had information that they did not share with the Lawsons; (2) that information was, the Lawsons have testified, material to their decision; and (3) there is at least **some** evidence (in the form of the TCAD appraisal and inferences drawn from the Lawson affidavit and Gullekson deposition) that the sunroom is not comparable to the remainder of the house, dragging down the home's true value to a well-informed buyer.

Thus, rather than ask what the buyers were told about the house's characteristics, the Court instead suggests that the buyers needed evidence about

---

[1] This section presumes the panel will only consider evidence in the response. (Op. 3). Because it implicates the consistency of Third Court opinions, the Lawsons' challenge to the standard applied is presented in their *en banc* motion.

physical dimensions of a particular room, Op. 5 ("that the sunroom was less than 450 square feet"), a point not in meaningful dispute. And rather than ask if there is at least some evidence the home did not match the representations, the Court instead asked whether a TCAD appraisal has "official" status elevating it to conclusive proof, Op. 5 (saying there is no evidence "the TCAD report constitutes the official representation of the home's square footage and thus any contrary representation is false"). The Lawsons did not need to conclusively show a precise amount of livable square footage to survive summary judgment.

And what should industry observers draw from the Court's brush-off of these fiduciary claims? Some of these defendants owe fiduciary duties as a matter of law. Yet the Court (erroneously) demands evidence that such a duty was owed. One of these defendants was the Lawsons' own agent—and failed to disclose material information to them. Yet the Court says there is no evidence that such a duty to disclose by a fiduciary exists. (Op. 5). The regulations governing real-estate professionals set out precisely such a duty—and more. TEX. ADMIN. CODE §§531.1 & 531.2; *see also* App'nt Br. 44-45 (discussing them). The contours of those duties are not a factual element that a plaintiff must prove.[2]

And as for the duty to disclose, all defendants were subject to Texas's real-estate fraud statute, which imposes a duty to disclose on any person who is aware that a representation is false and would benefit from the transaction. TEX. BUS. &

---

[2] Indeed, the no-evidence motion concedes the fiduciary duties owed to Ronnie. CR336.

COMM. CODE §27.01. This record shows that the defendants discussed the classification of the sunroom, *e.g.*, CR448-50; CR450-51; CR459-60; CR479-80; they did not tell the Lawsons, *e.g.*, CR519-20; and they stood to personally gain by the sale, *e.g.*, CR492-93. The statute does not demand more.[3]

## B. The evidence attached to the Lawsons' response does show fact questions, especially if reasonable inferences are (as required) drawn in their favor.

The Lawsons' theory is that the sellers, the sellers' agent, and their own agent worked together to keep them in the dark about the nature of the sunroom attached to this house. The question was whether this sunroom space was livable space, equivalent to the remainder of the house. A fair inference to be drawn from the TCAD property report, *see* CR521, is that different sorts of structures on a property have different per-square-foot valuations. The key question here is not "how physically big was the sunroom?" It is whether the sunroom space was fairly presented as part of the main house square footage. As Ronnie Lawson's affidavit put it, now that he knows the truth about the true nature of this sunroom, "we would have to disclose the sunroom was not livable space in a future" sale and thus "would have to sell the house with less square footage." CR520. While the Court wonders if there are industry standards showing "the sunroom's area should not have been counted," the board that licenses appraisers has already ruled that it

---

[3] The full summary judgment record contains even more evidence. These citations go to items attached to the Lawsons' response to the no-evidence motion.

would be improper for an appraiser to treat this sunroom as livable space. CR671-75; *see also* App'nt Br. 51-54 (discussing this later-developed evidence in regard to the request for reconsideration). The Lawsons did not need to prove the metes and bounds of industry standards to overcome a no-evidence motion—they merely need <u>some</u> evidence of falsity, not conclusive evidence.

Here, the TCAD figure that was attached to the Lawsons' response is at least <u>some</u> evidence that the livable square footage was lower than represented. CR520-521 (not only stating 1,578 as the "total living area" but also classifying the sunroom as "PORCH CLOSE FIN" and being of "class" "*4+", thus being of a different quality than was assigned to the main living space). The contrast between that document and the figure presented by the defendants indicates a fact dispute about truthfulness that is not appropriate for summary judgment. And because the evidence attached to the Lawsons' response indicates that Twyman, Gullekson, and the Keenes were all aware of this discrepancy, CR448-50 (Keenes and Gullekson knew); CR451 (Gullekson discussed with Twyman), it contains at least some evidence of their state of mind. This presents a fact question.

## II. SEGREGATION OF FEES IS A SUBSTANTIVE DEFECT IN PROOF, NOT A QUESTION OF ADMISSIBILITY OF EVIDENCE

The district court was made aware of the segregation-of-fees defect during trial—indeed, during the testimony itself. 2RR35; 2RR117-18. In awarding fees, the district court rejected the Lawsons' position.

The panel offers two rationales to say this point is waived. **First**, the panel seems to view the segregation issue as going to admissibility of testimony rather than sufficiency of evidence, suggesting that merely admitting the evidence might waive later objection. (Op. 10) **Second**, in the same vein, the panel would require that an objection to fee segregation be formally presented in a vehicle that might have "required the trial court to decide the issue." (Op. 10). This framework is contrary to supreme court, and even Third Court, case law.

### A. There are no "magic words" to preserve this issue, which is not a matter of admissibility but sufficiency

Directing the trial court to the legal defect in the evidence during the testimony is sufficient. As this court has previously held, TRAP 33.1 does not require specific magic words (such as "I object" or "objection") to preserve error, so long as the context made makes the trial court aware of the nature of the complaint. *Barina v. Barina*, No 03-08-00341-CV, 2008 Tex. App. LEXIS 8747, at *4-7, 2008 WL 4951224 (Tex. App.—Austin Nov. 21, 2008, no pet.).

The opinion reasons that fee testimony admitted without a more formal objection waives any later complaint about whether the evidence satisfied the

substantive legal standard of proof. (Op. 10) (citing *Chambers v. Ochiltree*, No. 03-04-00143-CV, 2014 Tex. App. LEXIS 11046, 2004 WL 2814288, at *5 (Tex. App.—Austin Dec. 9, 2004, no pet.) (mem. op.)). But *Chambers* made no such holding. Instead, the court merely observed that its record showed no complaint being voiced during the testimony or "at trial." 2014 Tex. App. LEXIS, at *14. On our record, by contrast, the issue was raised at trial.

When the panel suggests that magic words of objection were needed to actually stop the admission of this evidence, it drives a wedge in its own caselaw. The Court has previously held that what's needed to preserve a fee segregation issue is raising the point while the trial court might cure it—not preventing its very admission into testimony. *Kleas v. BMC West Corp.*, No. 03-05-00190-CV, 2008 Tex. App. LEXIS 9506 (Tex. App.—Austin Dec. 19, 2008, pet. denied) (considering if there was an objection to whether the jury charge segregated fees such that "the trial court [would] have an opportunity to correct any error").

Mere admission of the testimony does not waive this complaint. Instead, the objection attacks the trial court's <u>later</u> fee award. Recognizing that, the Court has considered whether a post-ruling or post-judgment motion might be too late— giving both "yes" and "no" answers. *Compare Daniels v. Wells Branch Mun. Util. Dist.*, 2010 Tex. App. LEXIS 8857, at *7-8, 2010 WL 4367017 (Tex. App.—Austin Nov. 5, 2010, no pet.) (mem. op.) (Puryear, J.) (examining whether complaint was made "in his post-judgment motion requesting new trial"), *with Horvath v. Hagey*,

6

No. 03-09-00056-CV, 2011 Tex. App. LEXIS 3451, at *18 (Tex. App.—Austin May 6, 2011, no pet.) (mem. op.) (op. on reh'g) (objection raised after trial court's ruling "was untimely and, thus, any error is waived"); *see also Am. Cas. Co. v. Neuwirth*, No. 03-10-00005-CV, 2011 Tex. App. LEXIS 4069, at *7-11, 2011 WL 2139121 (Tex. App.—Austin May 26, 2011, no pet.) (mem. op.) (examining if an objection came "after the trial court ruled" or "after the hearing ended"). The Court need not resolve this today, because our record shows this issue was raised <u>before</u> the trial court ruled. And the larger point is that these cases view fee segregation as challenging the ultimate award of fees—not the trial court's choice to admit discrete exhibits or testimony. *See also Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 312 (Tex. 2006) (describing this as "more a mixed question of law and fact"). The panel's waiver holding contradicts this law.

### B.     The trial court did rule by awarding these fees.

Just as there are not magic words required of a litigant, there are not magic words required of a judge to preserve error for appellate review. The only authority cited by the panel opinion for the opposite idea is Rule 33.1 itself—which, in its text, acknowledges that rulings can be made "either expressly or implicitly." Tex. R. App. P. 33.1. The trial court overruled the Lawsons' objection by making a fee award without the segregation demanded by law. CR554-55. The trial court's fee award, at a minimum, implicitly rejects the Lawsons' complaint. *Barina*, 2008 Tex.

App. LEXIS 8747, at *7 (entry of judgment "implicitly, if not expressly, overruled Barina's complaint").

✳✳

The Court should at a minimum reverse the fees. There is no question that the objection was clear from context. Yet counsel refused to segregate his work across claims or parties—relying time records with every such distinction whited-out, 3RR26-63, and refusing to separate fees even for the two defendants that (the trial court had previously ruled) were **not** contractually entitled to any fees at all, 2RR118; *see also* CR527 (neither Twyman nor Gullekson entitled to fees).

## III. "DIRECT BENEFITS ESTOPPEL" DOES NOT SUPPORT THIS JUDGMENT.

### A. This was not a summary-judgment ground below.

The trial court determined contractual entitlement to fees on a traditional summary-judgment motion that did not advance "direct benefits estoppel." That is not a valid basis to affirm. *See* TEX. R. CIV. P. 166a(c).

### B. Leah's claims do not fit "direct benefits estoppel"

#### 1. Leah does not assert "direct" contract rights that might trigger the doctrine.

The panel wrongly holds that Leah's claims, which include fraud, DTPA violations, and breaches of fiduciary duty, seek "direct benefits" that might trigger this kind of estoppel. (Op. 12). But Leah did not bring a contract claim, nor do any of her claims turn on duties created by the contract.

8

The supreme court has held that "direct benefits" is narrow; it does not apply where, as here, "liability arises from general obligations imposed by law." *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (explaining that the party bringing suit can elect not to assert contract rights and, instead, invoke tort or statutory duties). Nor is it enough that claims relate to a transaction involving the contract. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005). Instead, for "direct benefits estoppel" to apply, the liability theory "must 'depend on the existence of the contract'" and must "be unable to 'stand independently' without the contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527-28 (Tex. 2015) (citations omitted). Leah's claims are based on statutory and common-law tort duties. She does not assert rights created by the contract; her claims can stand independently. Under controlling law, this doctrine does not apply.

## 2. No Texas court has applied direct benefits estoppel to fees.

Using "direct benefits estoppel" to shift contract-based fees to a non-party is unprecedented. *See Eagle Fabricators, Inc. v. Rakowitz*, 344 S.W.3d 414, 420 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("we have not found[] any Texas case applying this doctrine to any question other than the determination of whether someone is bound by an arbitration clause"). As it turns out, the only fee case to even mention "direct benefits estoppel" does so in a passing footnote, while ultimately holding it improper to stretch the fee-shifting provision in a real-estate

9

form contract to a non-party. *Lesieur v. Fryar*, 325 S.W.3d 242, 251 n.7 (Tex. App.—San Antonio 2010, pet. denied) (holding realtor cannot recover under a form contract's fee-shifting provision because it was neither a named party to the sale nor an intended third-party beneficiary).

And stretching this contract provision to reach non-signatories also clashes with the American rule. Those cases, being rooted in freedom-of-contract principles, presume a "contract between the parties." *New Amsterdam Cas. Co. v. Texas Industries, Inc.*, 414 S.W.2d 914, 915 (Tex. 1967); *see also Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.*, 55 S.W.2d 1032, 1035 (Tex. Comm'n App. 1932, judgm't adopted) ("It is settled law in this state that, unless provided for by statute or <u>by contract between the parties</u>, attorneys' fees incurred by a party to litigation are not recoverable against his adversary"), quoted in, *Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). By permitting fee awards based on contracts never signed by the party, the Court would be carving a new exception into Texas law.

### 3. Nor does "estoppel" avoid the need for the Court to interpret the contract.

Estoppel cannot create a substantive right; it can, at most, deflect an attack on a preexisting right. *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988) (estoppel does not create substantive rights; it merely preserves existing rights). Thus, the Supreme Court has held that the estoppel of "direct benefits estoppel"

does not create a right to arbitration. Thus, a court applying direct benefits estoppel must <u>also</u> interpret whether the arbitration clause is broad enough in scope to cover the situation. *Rachal v. Reitz*, 403 S.W.3d 840, 849-50 (Tex. 2013) ("Having determined the arbitration provision at issue is enforceable against [the non-signatory], Rachal must also establish that the dispute is with notes scope of the agreement."). In the arbitration context, the strong presumption is in favor of arbitration. *Id.* By contrast, there is no presumption in favor of fee shifting.

The opinion fails to explain how Paragraph 17, which enumerates specific parties, can be reasonably interpreted to impose asymmetric fee-shifting against (but never in favor of) any <u>other</u> person in the world who dares to complain about the conduct of fiduciaries as they relate to a specific sale. *Cf. Lesieur*, 325 S.W.3d at 251 n.7 (similar clause did not authorize fee awards to parties not listed); *see also* App'nt Br. 60-65 (arguing against extending *Sierra* so far); TEX. ADMIN. CODE §537.11(c) (disclaiming any intention to limit "the licensee's fiduciary obligation to disclose to the licensee's principals all pertinent facts which are within the knowledge of the licensee"). Those questions were not decided by *Sierra*.

## IV. THE PANEL FAILED TO ADDRESS RECONSIDERATION.

There was a long gap between the summary judgment and the trial on the amount of fees. During that time, significant evidence came to light—including new public records contradicting arguments previously made by the defendants. Yet

the trial court refused to even hear the argument—and cited an elusive local practice as the basis for her powerlessness. The Lawsons have advanced this as another basis to reverse. App'nt Br. 51-57.

In general, a trial court has power to revisit interlocutory orders so long as it retains plenary power. *E.g.*, *Garst v. Reagan*, No. 03-13-00243-CV, 2014 WL 902554, 2014 Tex. App. LEXIS 2494, at *4 (Tex. App.—Austin Mar. 6, 2014, no pet.) ("not reasonable" to believe otherwise). This applies to a partial summary judgment, such as granted here. *Id.* at *5.

Nonetheless, the trial judge here believed that she lacked the power, under local practice among the judges, to revisit these questions without permission. 2RR9-10 (saying of this local practice, "we live by it and we die by it"). No such principle appears in any local rules. *See* App'nt Br. 54-57 (noting the lack of local rules and that such local rules, even if adopted, cannot dictate the substantive outcome of a case). There is a reason why interlocutory orders can be revisited—cases evolve, as does the trial judge's understanding of it. For the trial judge actually hearing live testimony and receiving exhibits to lack power to reconsider interlocutory orders merely because a different judge happened to sign them undermines this important aspect of trial practice.

The Texas Supreme Court recently dealt with a case from Bexar County in which a trial judge had refused to reconsider a prior ruling made by a judge previously assigned by the central docket. *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d

145, 2014 Tex. App. LEXIS 352, at *4-5 (Tex. 2015) (per curiam). The Court noted that it understood the Bexar system to give the second trial judge discretion—exactly the kind of discretion that the trial judge here said she understood herself to lack. *Id.* at *11 (there: "the successor judge … had discretion to reconsider the pretrial judge's interlocutory ruling but was not required to do so") (citing a San Antonio Court case describing that court's central docket system). The Supreme Court did not need to dig deeper in *Vernco Construction* because the parties did not argue that their trial judge had abused that discretion. *Id.* at *11n.2. But the Lawsons do contend that the trial court abused its discretion by, in part, relying on an erroneous view of the law as a basis for her decision. App'nt Br. 56-57. This issue should be addressed. Tᴇx. R. Aᴘᴘ. P. 47.1 ("must hand down an opinion that … addresses every issue raised and necessary to final disposition of the appeal").

## PRAYER

The Court should grant rehearing, reverse the judgment, and remand.

Respectfully submitted,

/s/ Don Cruse

Don Cruse
State Bar No. 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca Street, Suite 110-436
Austin, Texas 78701
[Tel.] (512) 853-9100
[Fax] (512) 870-9002
*don.cruse@texasappellate.com*

COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE

I certify that on July 16, 2015, this **Motion for Panel Rehearing** was sent by electronic service to appellate counsel of record:

D. Todd Smith
Smith Law Group, P.C.
1250 Capital of Texas Highway South
Three Cielo Center, Suite 601
Austin, Texas 78746
*Lead Counsel for Appellees*

/s/ Don Cruse

_____

Don Cruse

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rules of Appellate Procedure 9.4 because the sections covered by the rule contain 3311 words. The font used in the body of the brief is no smaller than 14 points, and the font used in the footnotes is no smaller than 12 points.

/s/ Don Cruse

_____

Don Cruse