

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HUMBERTO RIVAS, Individually, STEVE RIVAS, Individually, ATLANTIS CUSTOM POOLS & SPAS, HUMBERTO RIVAS d/b/a ATLANTIS POOLS & SPAS, and STEVE RIVAS d/b/a ATLANTIS POOLS & SPAS, | § § § § § | No. 08-23-00102-CV<br><br>Appeal from the<br><br>243rd Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2021DCV0785) |
| CARMEN MOLINA, | § | |
| Appellee. | § | |

**MEMORANDUM OPINION**

Appellants Humberto Rivas, individually, Steve Rivas, individually, Atlantis Custom Pools & Spas, Humberto Rivas d/b/a Atlantis Pools & Spas, and Steve Rivas d/b/a Atlantis Pools & Spas (collectively, the Rivas Defendants), appeal the trial court's order denying Humberto Rivas's motion to compel arbitration.[1] The central issue of this appeal is whether the Rivas

---

[1] The notice of appeal perfecting this appeal was filed jointly by all named Appellants. In a footnote of Appellee's brief, she concedes that Appellant Humberto Rivas has properly invoked this Court's interlocutory jurisdiction, but she calls into question whether any of the other appellants likewise invoked our jurisdiction of their appeals. Molina points out that only Humberto Rivas filed a motion to compel arbitration in the trial court, and the trial court's order only addressed his motion. Because Molina concedes the jurisdiction of Humberto Rivas's appeal, and because we

Defendants waived their arbitration right by substantially engaging in litigation to the detriment of Appellee Carmen Molina. Based on the totality of the circumstances, we hold the trial court did not abuse its discretion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2019, Molina contracted with the Rivas Defendants to construct a pool at her residence for the cash contract price of $30,000. After two years, Molina filed a lawsuit asserting the pool was faultily constructed and not completed on time. Molina alleged various causes of action against the Rivas Defendants including breach of contract, breach of the common law implied warranty of good and workmanlike services, negligence, and violation of the Deceptive Trade Practices Act. With her original petition, she attached a copy of the parties' one-page, pool-construction contract. On its face, the contract included the following sentence written all in bold: "THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION."

The Rivas Defendants responded by generally denying all allegations of the suit. After a scheduling conference was held on September 2, 2021, the trial court set the case for a jury trial on June 24, 2022. However, two months prior to this setting, the parties filed an agreed motion to continue the trial date. The motion described that some discovery had been completed but depositions and mediation still needed to be done. Molina also reported to the court that she had hired contractors to perform construction and repairs on the pool at issue. She noted that new

---

conclude the trial court did not err in denying his motion to compel arbitration, we see no need to parse out whether any of the other named appellants who are jointly aligned with Humberto Rivas had similarly invoked our jurisdiction.

information would subsequently be available regarding her claimed damages. The trial court granted the continuance.

Several months later, on August 18, 2022, the trial court held a status hearing where Molina informed the court that repairs were completed, and she calculated her damages at more than $20,000. The parties then represented they were ready for the court to set the case for trial. On August 30, 2022, the court issued an order setting the case for a jury trial on April 28, 2023, with a corresponding pretrial conference set for April 13, 2023. The written order required all discovery to be completed by the date of the pretrial conference.

Months later, on January 20, 2023, the Rivas Defendants sent Molina a demand to arbitrate. And four days thereafter, their attorney filed a motion to compel arbitration attaching the same one-page contract included with Molina's petition. Initially, the trial court set the motion for hearing on February 9, 2023, but it was then reset to March 2, 2023, based on Molina's unopposed request for more time to respond.

Molina filed an objection to the motion on February 27, 2023, arguing primarily that the Rivas Defendants had waived their right to compel arbitration by their litigation conduct. As a second point, Molina argued that compelled arbitration would advantage the Rivas Defendants. She pointed out that only a one-page contract had been produced, yet the terms indicated they remained subject to a "reverse side." Molina claimed she had concerns that, should the court compel arbitration, the Rivas Defendants could argue to her detriment that her claims were not properly arbitrable due to an unknown contract term. The Rivas Defendants replied with a series of arguments: first, they denied they had substantially invoked the judicial process; second, they urged they were not responsible for Molina's delay in bringing the case to trial; and last, they

claimed Molina had failed to show she was prejudiced by their failure to seek arbitration at an earlier time.

The trial court held a hearing on March 23, 2023. Counsel for both parties argued largely about whether the Rivas Defendants had waived their right to compel arbitration. The trial court noted that months earlier, at the status hearing of August 18, 2022, the parties expressed they were both ready for trial, and the case was then set for jury trial in April 2023. Moreover, at that conference, the trial court informed the parties that no further continuances would be granted. Ending the hearing, the trial court particularly noted the case had been filed in 2021, and it was now 2023. The trial court later signed a written order denying the motion to compel without making any findings of fact or conclusions of law.

The Rivas Defendants timely appealed and shortly thereafter filed an opposed motion for a stay of the jury trial scheduled for April 28, 2023. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098; TEX. R. APP. P. 29.3. We granted the motion, staying all trial court proceedings pending resolution of the appeal or further order of this Court.

## ISSUES ON APPEAL

The Rivas Defendants present two issues on appeal. First, they contend they established the existence of a valid and enforceable agreement to arbitrate. Second, they argue Molina failed to establish a waiver of the arbitration clause.

## STANDARD OF REVIEW

Arbitration is a contractual proceeding by which parties—in order to obtain a speedy and inexpensive final disposition of disputed matters—consent to have controversies resolved by an arbitrator. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605 (Tex. App.—El Paso 2005, no pet.) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992)). A party

seeking to compel arbitration has the burden to prove that a valid arbitration agreement exists and that disputed claims fall within the agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011).

If the moving party meets its burden of establishing a valid agreement, the burden shifts to the party opposing arbitration to raise a valid defense against its enforcement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam). Absent evidence of a valid defense, the trial court must compel arbitration. *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 780 (Tex. App.—El Paso 2015, no pet.) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). As a defense, the nonmovant may assert the movant waived its right to compel arbitration by substantially invoking the judicial process to the nonmovant's detriment or prejudice. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015); *Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008).

"We review the trial court's denial of a motion to compel arbitration for an abuse of discretion." *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 21 (Tex. App.—El Paso 2020, pet. denied). "Under this standard, we defer to the trial court's factual determinations that are supported by the record and review legal questions de novo." *Id.* We may uphold the trial court's decision on any appropriate legal theory urged below. *F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 629 (Tex. App.—El Paso 2022, no pet.).

## WAIVER

In their second issue, the Rivas Defendants assert Molina failed to prove they waived their right to seek arbitration. Molina responds in her briefing by claiming that waiver is the "sole issue for review." Accordingly, we address waiver first as we agree it is dispositive when properly established. *See* TEX. R. APP. P. 47.1. Because the parties raise no dispute over any of the relevant

5

facts, the waiver issue presents a question of law that we review de novo. *Perry Homes*, 258 S.W.3d at 598.

### A. Applicable law

"Like any other contract right, arbitration can be waived if the parties agree instead to resolve a dispute in court." *Id*. at 593. That is, "waiver can be implied from a party's conduct, although that conduct must be unequivocal." *Id*. The Supreme Court explained:

> Since 1846, Texas law has provided that parties to a dispute may choose to arbitrate rather than litigate. But that choice cannot be abused; a party cannot substantially invoke the litigation process and then switch to arbitration on the eve of trial.

*Id*. at 584. Even so, the Court counseled there existed a strong, yet rebuttable presumption against waiver of arbitration.[2] *Id*. ("There is a strong presumption against waiver of arbitration, but it is not irrebuttable and was plainly rebutted here."); *see also Truly Nolen*, 597 S.W.3d at 22–23. ("[T]he purpose of the presumption against finding a waiver of contractual arbitration is to preserve the purpose of the parties' agreement to obtain a speedy and inexpensive final disposition of the disputed matter.").

Thus, "a party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes*, 258 S.W.3d at 589–90. In short, a party asserting a waiver must prove both of the following: (1) substantial invocation of the judicial

---

[2] The United States Supreme Court recently clarified the meaning of the phrase, "policy favoring arbitration," which is often quoted in many cases governed by the Federal Arbitration Act (FAA). *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The *Morgan* Court explained the phrase, when first used, had referred to "the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* The *Morgan* Court noted it did not mean to suggest that federal courts could invent "special, arbitration-preferring procedural rules." *Id.* Instead, it clarified, "[t]he policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). In short, it described that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

6

process; and (2) prejudice.[3] *See id.* at 593. For "substantial invocation," the amount of litigation and extent of discovery depends on the context of each case. *Id.* (describing, for example, that "three or four depositions may be all the discovery needed in one case, but purely preliminary in another"). Prejudice refers to the inherent unfairness imposed on the nonmoving party in terms of delay, expense, or damage to his or her legal position. *Id.* at 597.

Until *Perry Homes*, the Supreme Court noted it had yet to find a waiver of a right to arbitration. *Id*. at 590. Rather, in a series of cases, it instead found that parties had not waived arbitration by merely engaging in certain kinds of litigation activities. *Id*. (citing, e.g., *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (no detriment shown by the filing of a cross-action seeking indemnity); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (moving to dismiss claim on lack of standing, not waiver); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (no waiver shown by a party filing an answer nor propounding a set of discovery)). The Court noted that each of those cases had illustrated the type of conduct that fell short of waiver when examined in context. *Id*. Despite these holdings, however, the Court

---

[3] In *Perry Homes*, the Texas Supreme Court concluded that a showing of prejudice was required for a party to establish a waiver of an arbitration right. 258 S.W.3d at 594. There, in 2008, it declined an invitation to reconsider the prejudice requirement based on a party urging both that federal courts were split on the issue, and Texas law did not require a showing of prejudice for waiver, but only an intentional relinquishment of a known right. *Id*. (citing, e.g., *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Nevertheless, *Perry Homes* declined the invitation to reject prejudice as a waiver requirement based on both federal and state law. *Id*. Yet, more recently and more than a decade after *Perry Homes*, the United States Supreme Court granted certiorari in *Morgan* expressly to resolve a federal circuit split on whether prejudice was indeed a part of the waiver analysis. *Morgan*, 596 U.S. at 416 (describing that nine circuits had invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule, and thus, had demanded a showing of prejudice, while two circuits had rejected that rule). Ultimately, *Morgan* held that prejudice was not "a feature of federal waiver law generally." *Id*. at 415. It described that, under federal law, courts are "wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Id*. at 417–19. Though *Morgan* clarified federal law, and Texas has long acknowledged "the importance of keeping federal and state arbitration law consistent," we still note that *Perry Homes* included a second ground for requiring prejudice under Texas law. 258 S.W.3d at 595. The Supreme Court held, "[u]nder Texas law, waiver may not include a prejudice requirement, but estoppel does." *Id*. That is, "prejudice is an element of the normal contract rules." *Id*. ("In cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back.").

7

reiterated it had previously warned that a party seeking arbitration on the eve of trial would evince the type of conduct that was sufficient to support a waiver of the arbitration right. *Id*. (citing *In re Vesta Ins.*, 192 S.W.3d at 764).

Ultimately, to clarify how waiver is determined, *Perry Homes* developed a multi-factor, totality-of-the-circumstances test. *Id.* at 590–92. At the same time, the Court emphasized that "tests based on 'reasonableness' are never susceptible to mechanical application," and instead, courts should carefully examine waiver in terms of the litigation context, considering the size and complexity of each case. *Id*. at 592–93. The relevant factors for a court to consider are:

- whether the party who pursued arbitration was the plaintiff or the defendant;
- how long the party who pursued arbitration delayed before seeking arbitration;
- when the party who pursued arbitration learned of the arbitration clause's existence;
- how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;
- how much time and expense has been incurred in litigation;
- whether the party who pursued arbitration sought or opposed arbitration earlier in the case;
- whether the party who pursued arbitration filed affirmative claims or dispositive motions;
- how much discovery has been conducted and who initiated the discovery;
- whether the discovery sought would be useful in arbitration;
- what discovery would be unavailable in arbitration;
- whether activity in court would be duplicated in arbitration;
- when the case was to be tried; and
- whether the party who pursued arbitration sought judgment on the merits.

*Id*. at 591; *Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 519–20 (Tex. App.—El Paso 2013, no pet.). Of these factors, waiting until the eve of trial to seek arbitration is an especially weighty factor of the multi-factor test. *See Perry Homes*, 258 S.W.3d at 584. The Court more fully described, "[t]he rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion[.]" *See id.* at 596.

8

Lastly, as the Court noted, all of the factors of the multi-factor test are rarely presented in a single case; thus, waiver can be established based on only a few or even the existence of a single one. *Id.* at 591. Here, this admonishment rings especially true given that neither party is claiming the instant case is complicated or multi-faceted.

## B. Substantial invocation of the judicial process

Applying the multi-factor test, we first address how long the Rivas Defendants delayed before seeking arbitration. Molina filed this lawsuit on March 9, 2021, and on August 30, 2022, the case was set for a jury trial starting April 28, 2023. Not until January 20, 2023, or twenty-two months after the lawsuit was filed, and only three months prior to trial, did Humberto Rivas decide he would seek arbitration by filing a motion to compel. As we earlier noted, the rule that one cannot wait until the eve of trial to request arbitration is not limited to the evening prior to trial; instead, it is a rule of proportion. *Id.* at 596. Here, the Rivas Defendants sought arbitration after litigating for twenty-two of twenty-five months. This lengthy delay in seeking arbitration coupled with its timing months shy of a trial setting weighs strongly in favor of finding substantial invocation of the judicial process. *See id*. at 596–97 (describing that a 14-month delay coupled with an arbitration request made shortly before the trial setting demonstrated waiver); *see also Truly Nolen*, 597 S.W.3d at 24 (18-month delay and request made on the eve of trial constituted a waiver of the arbitration right).

Next, we look to the nature and amount of discovery and pre-trial activities before arbitration was sought. Molina's lawsuit sought damages based on her allegation that the Rivas Defendants had failed to construct a swimming pool according to contract obligations. The Rivas Defendants generally denied Molina's breach of contract claim without otherwise asserting a right to arbitration. Additionally, they responded to requests for production of documents and

interrogatories. They listed multiple witnesses to be called at trial including custodians of records of several businesses and of the County of El Paso Sheriff's Department. They also propounded discovery on Molina. Molina produced 72 pages of documents and responded to twenty interrogatories. Broadly, all discovery was directed towards the merits of the case, not towards arbitrability issues. Discovery addressed contract terms, the subsequent repair of the pool, and facts related to Molina's breach-of-contract allegations. In the context of the nature of this dispute, we conclude the amount and extent of the discovery weighs in favor of a finding of a substantial invocation of the judicial process. *See Perry Homes*, 258 S.W.3d at 596–97 (describing that arbitration is ordinarily sought to reduce delay by severely limiting *both* pretrial discovery *and* post-trial review); *Truly Nolen*, 597 S.W.3d at 25.

Another factor to consider is when the Rivas Defendants learned of the arbitration clause's existence. At the hearing on their motion, the Rivas Defendants argued they only learned of the clause while answering discovery in December 2022, or early 2023. Molina's counsel responded first by arguing that parties are charged with having knowledge of provisions contained in their own contracts. And second, to rebut the assertion of a lack of awareness of the right to arbitrate, Molina's counsel next produced a response to a pre-suit demand letter dated in 2020 wherein the Rivas Defendants' counsel mentioned the contract provided for binding arbitration. Molina's counsel explained that, at that time, Molina was concerned about whether missing terms on a purported reverse side of the one-page contract might need interpretation by the court. Thus, counsel filed the lawsuit anticipating a second page of the contract would soon be produced. But after answering with a general denial, the Rivas Defendants merely engaged in the litigation process without relying on or producing a double-sided contract. Ultimately, Molina argued the

10

Rivas Defendants knew of the arbitration clause well before late 2022 as they now argued at the hearing.

In briefing on appeal, the Rivas Defendants no longer claim they lacked notice of the arbitration clause or only learned of its existence in late 2022 or early 2023. As a result, we conclude this factor weighs in favor of substantial invocation of the judicial process as the Rivas Defendants were not unaware of their right to arbitrate from March 2021, when the litigation process had begun with the arbitration clause included in the one-page contract. *Perry Homes*, 258 S.W.3d at 593 ("Like any other contract right, arbitration can be waived if the parties agree instead to resolve a dispute in court.").

Last, we consider whether the Rivas Defendants filed affirmative claims or dispositive motions. The record shows the Rivas Defendants did not formally file any affirmative claims or dispositive motions, and the trial court did not hold any merits-based hearings before ruling on the motion to compel arbitration. We agree with the Rivas Defendants that this factor weighs against a finding of substantial invocation of the judicial process.

Considering the totality of the multi-factors applied, we conclude the greater weight of relevant factors favors a finding of substantial invocation of the judicial process, while only one factor weighs against that result. On one side, the Rivas Defendants were aware of the arbitration provision from the outset of the litigation yet they waited more than twenty-two months before seeking compelled arbitration; moreover, during that period of litigation activity, they filed a general denial and thereafter propounded and answered merits-based discovery including disclosure of trial witnesses; finally, after the trial court gave an eight month lead time before an April 2023 trial setting, they waited another five months before seeking arbitration only three months before trial. The overall weight of these factors establishes a substantial invocation of the

judicial process. Proportionally, a movant waiting until three months before trial after engaging in twenty-two months of judicial activity is an especially weighty factor of the multi-factor test. *See Perry Homes*, 258 S.W.3d at 584. And while it may be said that the amount of discovery was limited in quantity, we are counseled that "[h]ow much litigation conduct will be 'substantial' depends very much on the context[.]" Although we note that discovery was modest in quantity, its scope extended beyond arbitrability disputes to matters related to trial preparation. In context, this discovery may be all that was needed for a relatively straightforward case. *See id.* at 596; *Truly Nolen*, 597 S.W.3d at 25 (totality of the circumstances established substantial invocation of the judicial process based on the delay until the eve of trial and extensive conduct in pursuing discovery); *Green v. Velocity Invs., LLC*, No. 05-20-00795-CV, 2022 WL 3655232, at *5 (Tex. App.—Dallas, no pet.) (mem. op.) (totality of the circumstances supported finding of substantial invocation where arbitration sought on the eve of trial); *Sivanandam v. Themesoft, Inc.*, No. 05-21-00645-CV, 2022 WL 872623, at *5 (Tex. App.—Dallas, pet. denied) (mem. op.) (same).

Here, rather than explain the reason for their nearly two-year delay in seeking arbitration, the Rivas Defendants simply direct our attention to Molina's conduct. First, they point out that Molina sought a continuance of the jury trial originally set for June 24, 2022, which resulted in a reset to April 28, 2023. The record shows that Molina based her agreed motion for continuance on her having hired new contractors to repair the swimming pool. Once the work was completed, she informed the court that additional information would be available regarding her claimed damages, and the parties would be in a position to begin taking depositions. Second, the Rivas Defendants also assert that Molina was the one who twice requested a continuance of the hearing on the motion to compel arbitration and it was also delayed by the trial court. They also note that additional delay

arose from the trial court itself delaying its ruling on the motion to compel. Notwithstanding these circumstances, we are not persuaded by these arguments. Notably, whether or not a nonmovant sought trial continuances, or other delays occurred, those circumstances are not factors included in the multi-factor test. Instead, *Perry Homes* more narrowly directs us to consider only "how long the movant delayed before seeking arbitration." 258 S.W.3d at 591.

The Rivas Defendants also argue that a party can be involved in different types of conduct without substantially invoking the judicial process. They cite to a number of different Supreme Court cases, claiming each illustrates their point. Some of the cited cases include activity similar to activity occurring here, while others do not.[4] For example, they cite to the following cases, which include similar activities or circumstances occurring here: *RSL Funding*, *LLC v. Pippins*, 499 S.W.3d 423, 432 (Tex. 2016) (per curiam) (concluding that defensive conduct alone is not waiver); *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (per curiam) (determining that an 8-month delay in seeking arbitration while discussing a trial setting and allowing limited discovery did not evince waiver as movant did not waive until the eve of trial to move to compel); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (per curiam) (describing that answering suit, propounding discovery, and entering into an agreed order resetting the case for a later trial date "is not prejudicial"); and *In re Bruce Terminix Co.*, 988 S.W.2d at 704 (finding that participation in minimal discovery was useful to arbitration and failed to establish prejudice). Of the similar-activity cases, only *RSL Funding* and *Fleetwood Homes* were decided

---

[4] Other cases cited by Appellants include a number highlighting activity not relevant to this case. *See, e.g.*, *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007) (per curiam) (filing a motion for new trial following a default judgment does not waive arbitration right); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (filing suit does not waive arbitration right); *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (per curiam) (taking depositions does not waive arbitration right). We distinguish these cases because the activities addressed are not relevant to the instant case, and these cited cases, as well, all pre-date *Perry Homes.*

after *Perry Homes*. Thus, the Rivas Defendants rely in part on cases not applying *Perry Homes'* multi-factor test nor its consideration of the totality of the circumstances in context. *See Perry Homes*, 258 S.W.3d at 591. As for *RSL Funding* and *Fleetwood Homes*, which are the two remaining cases relied upon, we find those cases factually distinguishable based on their shorter delay in seeking arbitration and their lack of any indication of the movant waiting until the eve of trial. In *RSL Funding*, the Court concluded that a delay of less than three months as to one party and less than eight months as to others did not rise to substantial invocation of the judicial process. 499 S.W.3d at 432. While in *Fleetwood Homes*, it decided that serving one set of written discovery and not waiting until the eve of trial to move to compel arbitration was not enough to overcome the presumption against waiver. 257 S.W.3d at 694.

In sum, though we have no quarrel with any of the cited authorities, we simply find them distinguishable due to shorter delays in seeking arbitration, the complexity of the cases considered as compared to the case at hand, and the lack of any eve-of-trial circumstance. As *Perry Homes* cautioned, "[h]ow much litigation conduct will be 'substantial' depends very much on the context[.]" 258 S.W.3d at 593. Though the Rivas Defendants invite us to consider each factor individually, we are instructed not to apply a mechanical approach, but instead to consider the totality of the circumstances in context. *Id*. Doing so, we conclude the factors weigh in favor of substantial invocation of the judicial process.

Having reached this conclusion, we move next to consider whether Molina established she was prejudiced by the Rivas Defendants' conduct.

## C. Prejudice[5]

Even though Molina failed to provide evidence showing the expenses she incurred while engaged in the litigation process and in pre-trial preparation, these activities are plainly not without costs and expense. *See Ellman*, 419 S.W.3d at 522 (holding that the party opposing arbitration is not always required to prove the cost of the discovery in order to prove prejudice). Moreover, this Court has found there is some minimal showing of damage to a plaintiff's legal position where the plaintiff has responded to merits-based discovery and produced pretrial disclosures including lists of trial witnesses and exhibits. *See Truly Nolen*, 597 S.W.3d at 25. And again, in light of the straightforward nature of the present case, we cannot say the expense demonstrated and late timing of the change of course after completion of written discovery lacks proof of an inherent unfairness.

Based on the showing of an unexcused delay, undeniable expenses associated with litigation, and damage to her legal position, we conclude Molina showed the necessary prejudice resulting from the Rivas Defendants' substantial invocation of litigation. *See Perry Homes*, 258 S.W.3d at 597 (holding that a party's conduct prejudiced the other party opposing arbitration where, in part, the party received extensive discovery and delayed disposition by switching to arbitration when trial was imminent); *F.T. James Constr.*, 657 S.W.3d at 635 (determining that prejudice had been shown by the time and expense incurred during litigation as the record showed the movant had known of the existence of an arbitration clause); *Truly Nolen*, 597 S.W.3d at 25 (holding that the extreme delay, undeniable expense, and at least a minimal showing of damage to plaintiff's legal position evidenced the necessary showing of prejudice); *see also Com-Tech*

---

[5] We reiterate that the United States Supreme Court recently rejected any requirement of prejudice as an "arbitration-specific" federal procedural rule in cases brought in federal court. *See Morgan*, 596 U.S. at 416–19. To date, however, this requirement remains an open question with regard to state law and procedure. Regardless of whether *Morgan* governs our analysis, we nevertheless determine that Molina established she suffered prejudice as a result of the Rivas Defendants' substantial invocation of the judicial process up until the eve of trial.

*Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1578 (2nd Cir. 1991) (holding that the district court's conclusion that the defendants had forfeited their contractual right to compel arbitration was supported by: (1) the proximity of a previously scheduled trial; and (2) the defendants' full participation in discovery, including the deposition of seven plaintiffs).

We conclude the record established the Rivas Defendants waived their right to compel arbitration by their substantial invocation of the judicial process to Molina's detriment. Accordingly, the trial court did not err in denying the Rivas Defendants' motion to compel arbitration. We overrule the Rivas Defendants' second issue. Based on this conclusion, there is no longer a need to consider their first issue. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's order denying the motion to compel arbitration.

GINA M. PALAFOX, Justice

February 15, 2024

Before Alley, C.J., Palafox and Soto, JJ.

16